**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PETER A. HOCHSTEIN, ET AL.,

       Plaintiffs,                    CASE NO. 04-CV-73071
                                             PAUL D. BORMAN
-vs-                                      UNITED STATES DISTRICT JUDGE

MICROSOFT CORPORATION, ET AL.,

       Defendants.
_____/

**OPINION AND ORDER**
**(1) DENYING DEFENDANT SCEA'S MOTION TO STRIKE EXHIBIT E & K;**
**(2) GRANTING DEFENDANT SCEA'S MOTION TO STRIKE EXHIBIT J;**
**(3) DENYING DEFENDANT SCEA'S MOTION TO STRIKE PORTIONS OF THE DECLARATIONS OF DR. JAMIN AND DR. XYDIS;**
**(4) DENYING PLAINTIFFS' MOTION TO SUBSTITUTE EXPERT;**
**(5) DENYING PLAINTIFFS' MOTION TO ADD EXPERT REPORT**

**I.    BACKGROUND**

Before the Court is Defendant Sony Computer Entertainment America's ("SCEA") September 2, 2005 Motion to Strike Portions of Plaintiffs' Opposition to SCEA's Motion for Summary Judgment. (Docket Nos. 97, 98, 101). Plaintiffs entered their Response to the Motion to Strike on September 19, 2005. (Docket No. 109). Defendant SCEA filed a Reply on September 29, 2005. (Docket No. 114).

Also before the Court is Plaintiffs' September 6, 2006 Motion for Leave to Substitute Experts and Motion to Add Expert Report. (Docket No. 190). Defendant SCEA filed its Response on September 21, 2006. (Docket No. 193). Defendant Microsoft Corporation ("Microsoft") filed its Response on September 21, 2006. (Docket No. 194). Plaintiffs filed their Reply to Defendants' Response on September 27, 2006 (Docket No. 203).

## II. ANALYSIS

Defendant SCEA moves this Court to exclude the following Exhibits attached to Plaintiffs' Brief in Opposition to SCEA's Motion for Summary Judgment. (Docket No. 89).

(1) Exhibit E: May 21, 2001 Letter to Sony Online Entertainment
(2) Exhibit J: Press Release from Sony Online Entertainment
(3) Exhibit K: Bell Comms. Research v. Fore Sys., Inc., 62 Fed. Appx. 951 (Fed. Cir. 2003) (unpublished)
(4) Exhibit O: Declaration of Dr. Sugih Jamin
(5) Exhibit Q: Declaration of Dr. Thomas Xydis

### A. Defendant SCEA's Motion to Strike Exhibits E & J

#### 1. *May 21, 2001 Letter to Sony Online Entertainment*

Plaintiffs' Exhibit E appears to be two letters from attorney Harold W. Milton, Jr., of Howard & Howard Attorneys P.C., who is now one of the plaintiffs, (1) to Lisa Lunger, Senior Counsel of Sony Computer Equipment ("SCE") in Foster City, CA on February 12, 1997; and (2) to Kelly Flock of Sony Online Entertainment ("SOE") in San Diego, CA on May 21, 2001. The letters indicate that Mr. Milton had become aware the Sony Computer Equipment was infringing upon Plaintiffs' patents, proposed a possible licensing agreement, and requested that SCE "cease and desist further infringement of these patents."

Defendant SCEA argues that the May 21, 2001 Letter from Howard & Howard Attorneys, P.C., should not be considered as part of the record for summary judgment because it (1) was not authenticated under FRE 901 and (2) is irrelevant under FRE 402. SCEA does not challenge the authenticity of the letter.

Plaintiffs argue that (1) Sony never denies receiving the letter and (2) the issue is relevant to the relationship among the SCE, SOE, and SCEA. Plaintiff further attaches an affidavit from the attorney Harold W. Milton, Jr., attesting that he had sent the letters in question. (Docket No. 109, Exhibit G, Affidavit of Harold W. Milton, Jr.).

The Court agrees that the Affidavit of Milton sufficiently authenticates the letters under FRCP 56(e). Furthermore, Plaintiffs only include the letter to show that their attorney attempted to contact certain individuals at SCE and SOE to inform them of their belief that Sony was infringing upon their patent. The Court does not accept Defendant SCEA's contention that the letter is "irrelevant" because various Sony corporate entities had only "unrelated third party" relationships. For the purposes of the summary judgment record, the letter is relevant and not unfairly prejudicial to Defendant SCEA in the evaluation of the infringement and validity claims.

2.     *Press Release from Sony Online Entertainment*

Exhibit J purports to be a press release authored by SOE and dated January 14, 2004, concerning the release of the video game "Champions of Norrath." In relevant part, the press release states that "[i]n order to support the amount of data that passes among four players talking and playing simultaneously, Champions will require a broadband connection in order to experience the online multiplayer game. . . ." Plaintiffs include Exhibit J in their brief as evidence that Defendant SCEA admitted that both voice and data pass "simultaneously" through a broadband connection.

Defendant SCEA claims that Plaintiffs have not sufficiently authenticated the SOE press release. At the same time, Defendant SCEA does not dispute the authenticity of the press release. There is some debate whether, in the absence of a challenge of authenticity from the opposing party, press releases are self-authenticating under FRE 902. *See Woolsey v. Nat'l Transp. Safety Bd.*, 993 F.2d 516, 520-21 (5th Cir. 1993); *In re Unumprovident Corp. Secs. Litigation*, 396 F. Supp. 2d 858, 876-77 (E.D. Tenn. 2005); *but see Trans-Tec Asia v. M/V Harmony Container*, 435 F. Supp. 2d 1015, 1031 (N.D. Ill. 2005) (questioning that press releases are self-

authenticating under FRE 902(6)). However, even if this press release is self-authenticating, if it is to be introduced for the truth of the matter it asserts, it must fall under a recognized hearsay exception to be admitted. *See, e.g., United States v. Bellucci*, 995 F.2d 157, 160 (9th Cir. 1993) ("The fact that a document may be self-authenticating does not render it admissible if it is hearsay in the absence of a recognized exception to the rule against hearsay").

Defendant SCEA argues that Plaintiffs' Exhibit J is inadmissible as hearsay, since SOE's admission therein that PS2's game console simultaneously transmits voice and data is not a party admission of SCEA. Furthermore, Defendant SCEA claims that Exhibit J is irrelevant, since it relates to "users' perceptions" that data and voice are being transmitted simultaneously, and is not probative of any of the technical issues in this case.

Plaintiffs contend that SOE's press release should be considered as a party admission under FRE 802(d)(2) as either a statement of an agent, statement of an authorized person, or as an adoptive admission. As evidence that the Court should attribute the statement of SOE as a statement of SCEA, Plaintiffs point to the following:

(1) Sony owns the copyright to the video game Champions of Norrath;
(2) Sony owns the trademark to the video game Champions of Norrath;
(3) Sony retains the right to evaluate and to approve press releases under its contract with its video game publishers;
(4) Sony retains the right to approve all executable software for the final licenses of the product.

Even if the statement in the press release can be characterized as an adoptive admission or a statement of a party's agent under FRE 801(d)(2), the relevant passage is not probative of the technical definition of "simultaneously." Therefore, the Court grants Defendant SCEA's Motion to Strike the Exhibit J from Plaintiffs' Brief in Opposition, as well as Plaintiffs' statements in reliance.

4

       3.    *Unpublished Federal Circuit Case*

Defendant SCEA requests, without analysis, that this Court ignore Plaintiffs' citation as precedent to the unpublished Federal Circuit case *Bell Communications Research v. Fore Systems, Inc.* 62 Fed. Appx. 951 (Fed. Cir. 2003) (unpublished). In that case, the court stated that time division multiplexed signal carries several input signals "simultaneously" without regard to the precise timing of data insertion." *Id.* at 957-58. At the same time, Defendant SCEA does not cite to any published or unpublished Sixth Circuit cases that address the same issue.

Sixth Circuit Rule 28(g) provides:

> Citation of unpublished decisions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. If a party believes, nevertheless, that an unpublished decision has precedential value in relation to a material issue in the case, and that there is no published opinion that would serve as well, such a decision may be cited if that party serves a copy thereof on all other parties in the case and on this Court. Such service shall be accomplished by including a copy of the decision in an addendum to the brief.

This Court acknowledges that an unpublished case from the Federal Circuit is not precedent and is not binding upon courts in the Sixth Circuit. However, if no other Sixth Circuit precedent exists on point, the Court recognizes that such a case can have persuasive value.

**B.    Defendant SCEA's Motion to Strike Portions of the Declarations of Dr. Jamin and Dr. Xydis**

Defendant SCEA motions to strike portions of the declarations of Dr. Jamin and Dr. Xydis contained in Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment pursuant to FRCP 26(a)(2) and 37(c)(1). Specifically, Defendant SCEA asserts that portions of these declarations are new and untimely. Defendant SCEA asks this Court to exclude portions of the declarations, as well as argument based upon those declarations, that are not supported by the

5

Plaintiffs' experts' previously disclosed Rule 26 expert reports and rebuttals.

Federal Rule of Civil Procedure 26(a) provides, in pertinent part, that "a party shall disclose to other parties the identity of any person who may be used at trial to present [expert opinion evidence]" and submit a detailed report which includes the expert's qualifications and "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(A)-(B). Rule 37(c)(1) enforces Rule 26(a) by providing that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Although Rule 37(c)(1) is traditionally invoked to preclude expert testimony at trial, it has been held to apply to motions for summary judgment. *See Vance By & Through Hammons v. United States*, 182 F.3d 920 (6th Cir. 1999) (table opinion) (holding that Rule 37(c)(1) requires the exclusion of expert testimony first disclosed after the court-imposed deadline).

Defendant SCEA references several cases for the proposition that a party cannot include new opinions in declarations attached in summary judgment motions and replies.

In *Poulis-Minott v. Smith*, 388 F.3d 354 (1st Cir. 2004), a party challenged three expert affidavits that were filed four days after the discovery deadline and one and a half months after the expert disclosure deadline. *Id.* at 357. First, the court recognized that "[a]lthough Rule 37(c)(1) [was] traditionally invoked to preclude expert testimony at trial, it can also be applied to motions for summary judgment." *Id.* at 358. Furthermore, it recognized that a court should not exclude tardy expert opinions if the failure to reveal them "was either substantially justified or harmless." *Id*. Finally, the court recognized that the proper solution was (1) to strike portions of

the declaration that went beyond the scope of the original expert designation and (2) to determine if the inclusion of new opinions was harmless. *Id*. at 359.

Similarly, in *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797 (N.D. Ill. 2005), a party challenged its opponent's inclusion of 52-page expert declaration included in the opponent's response to the party's motion for summary judgment. *Id*. at 806. The opponent argued *inter alia* that the declaration should not be stricken as untimely because (1) it was a proper rebuttal report to a new expert and (2) it was a only a supplement to the original expert report. *Id*. The trial court found that it must exclude all opinions that were not (a) substantially justified for failure to disclose the opinions earlier or (b) harmless. *Id*. at 806-07. The court then preceded to evaluate the expert's declaration to determine to determine which opinions either met or ran afoul of that rule.

Plaintiffs cite several cases for the proposition that Rule 26 allows an expert to revise or further clarify opinions in response to points raised in the presentation of a case. In *McHugh v. Olympia Entm't, Inc.*, 37 Fed. Appx. 730 (6th Cir. 2002) (unpublished), the defendants argued that the district court improperly allowed the plaintiff's expert to testify beyond his original Rule 26 report at trial. *Id*. at 735. In that case, the plaintiff suffered an acute subluxation to the neck when forcibly removed from a music concert by several police officers. *Id*. at 733. The defendants argued that the plaintiff had required his subsequent traction and surgery due to a preexisting neck fracture. *Id*. The plaintiff had identified that his expert would testify to the mechanical forces necessary to cause injury, including the fracture and anterior displacement. *Id*. at 736. The plaintiff's expert testified in his Rule 26 report that there was no reason to believe that the plaintiff had a preexisting injury since he would have been killed or paralyzed if that

were the case. *Id.* at 735. However, at trial, the plaintiff's expert testified that there was a preexisting fracture at the time of the assault. *Id*. The court stated:

> Nothing in Rule 26, however, precludes an expert from revising of or further clarifying opinions, particularly in response to points raised in the presentation of a case. Rule 26 must be read in light of its dual purposes of narrowing the issues and eliminating surprise. We need to balance fairness to the opposing party with the realities of adversarial litigation.

*Id.* (internal citations omitted). The court found that the expert's "change in his position on the preexisting fracture did not constitute an unfair surprise" and that "[h]is testimony was not a departure from the general scheme of his report." *Id*. at 736. The court also found no error since the defendants did not state how exactly they were prejudiced, the same facts were presented to the jury through other witnesses, and the defendants had an opportunity to impeach the plaintiff's expert. *Id*.

The Court notes that both *McHugh* and *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1 (1st Cir. 1985), deal with purportedly "new" expert opinions at trial rather than at the summary judgment stage. Both decisions contemplate that Rule 26 should not be read so narrowly to prevent an expert witness at trial from (1) rebutting the analysis by another expert or (2) clarifying his or her opinion. *See McHugh*, 37 Fed. Appx. at 735-36; *Johnson*, 775 F.2d at 7-9.

At the same time, this Court finds that similar reasoning should apply to expert declarations attached to summary judgment motions. *See Poulis-Minott*, 388 F.3d at 358.

Hence, for the purposes of summary judgment, this Court holds that the proper standard for evaluating Defendant's Motion to Strike Portions of the expert declaration in question is to determine initially what, if any, of Plaintiff's expert's declarations are "new." By "new," the Court should determine initially whether the expert is attempting to rebut the analysis of another

8

expert or to clarify his or her position, comporting with the "general scheme" of the report. *McHugh*, 37 Fed. Appx. at 735-36. If portions of the declaration are determined to be "new," the Court will then ask (1) if Plaintiffs have a substantial justification for failure to reveal it or (2) whether the failure to reveal the opinions was harmless. *See Dickenson v. Cardiac & Thoracic Surgery of E. Tennessee, P.C.*, 388 F.3d 976, 983 (6th Cir. 2004).

Defendant SCEA motions this Court to strike the Paragraphs 5, 6, 7, 8, and 9 of Dr. Jamin's declarations as well as the corresponding portions of Plaintiffs' brief in opposition. Defendant SCEA objects to Paragraphs 6, 8, and 9 as constituting new opinions with no antecedent basis in Dr. Jamin's two Rule 26 reports. Defendant SCEA objects to Paragraphs 5 and 7 referring to "col. 9, 11. 17-24 of the '125 patent" since Dr. Jamin never mentioned that he relied upon that in his reports.

Much of the information that Plaintiffs claim has already been disclosed is derived from the experts' depositions, and not from their reports submitted to the Court. Defendant SCEA claims that deposition testimony on a topic does not cure a failure to provide Rule 26 disclosure, and that information on which the experts will rely must be contained in the written report itself. *See Ferriso v. Conway Org.*, No. 93-7962, 1995 WL 580197 (S.D.N.Y. Oct. 3, 1995) (unpublished). Plaintiffs argues, without authority, in their response that disclosure of information during the deposition stage is sufficient for purposes of Rule 26(a).

Defendant SCEA alleges that Paragraphs 5-9 of the Jamin Declaration constitute new information. As a preliminary matter, Defendant concedes that Paragraphs 5 and 7 do not constitute new information. Rather, Defendant's argument is that Dr. Jamin's reliance on an additional portion of the '125 patent constitutes information not previously disclosed.

9

Defendant SCEA also contends that Paragraphs 6, 8, and 9 constitute new opinions. Dr. Jamin's statements in these paragraphs concern the ability of persons of ordinary skill to perform the functions described in the patents.

Defendant SCEA urges this Court to accept the reasoning in *Ferriso*, an unpublished New York district court case, that deposition testimony cannot cure a failure to disclose "a complete statement of all opinions to be expressed and basis and reasons therefor." FRCP 26(a)(2)(B). In *Ferriso*, a sexual harassment case, the plaintiff's expert submitted a report that she would testify to the defendant's corporate sexual harassment policies and whether those procedures were generally adequate to deal with such complaints. *Ferriso*, 1995 WL 580197, at *1. Three months later, and five months before trial, the plaintiff's expert suggested in one instance at her deposition that she would also testify to the subject of whether the plaintiff's reactions to the alleged harassment was "typical." *Id*. at *2. The defendants moved the court to confine the plaintiff's expert to the subject of adequacy of the company's sexual harassment policy not and not to allow the expert to testify on the plaintiff's specific situation. *Id*. at *1. The plaintiffs responded that the expert's deposition testimony put the defendants on notice of the subject of her trial testimony. *Id.* at *2. The court rejected that argument stating that the "precise requirements of [FRCP 26(a)(2)(B)] cannot be mooted by a casual reference in the course of a deposition." *Id*. Nevertheless, the court opined that the plaintiff's expert still could submit an amended expert report before trial, including that new subject area, but refused to state at that point whether that would have been prejudicial. *Id*. at *2-3.

In this Court's view, the *McHugh* and the cases cited by Defendant SCEA are reconcilable. *McHugh* stands for the proposition that for the purposes of FRCP 26(a), an expert

must stick to the "general scheme" of his or her report in opining on issues as the case is presented. 37 Fed. Appx. at 736. In *Ferriso*, the plaintiff's expert announced an intention to testify to an opinion completely outside of the "general scheme" of her Rule 26 report. In *Poulis-Minott*, the court found that the magistrate judge properly struck the affidavits that went "beyond the scope of the expert designation." 388 F.3d at 359. In *Solaia Technology*, the court noted the following about the expert declaration included with the plaintiff's response to summary judgment:

> The Declaration is 52 pages long and consists of various statements of background information and opinion, including lengthy quotations of testimony by other witnesses.
> . . . .
> It would appear that [the expert's] much expanded opinion was prompted solely by [the opposing party's] summary judgment motion. Indeed as [the opposing party] points out, much of [the expert's] opinion reads like a legal brief in that [the expert] often describes [the] summary judgment arguments then responds to them. This is not the proper role for supplementation of a report by an expert.

361 F. Supp. 2d at 804, 806. This is not the case here. In the two declarations (one three-page and the other five-page), Plaintiffs claim in effect that (1) the opinions are not new and (2) any inclusion of "new" opinions outside the Rule 26 reports are either "harmless" or "substantially justified." Plaintiffs further claim that some of Defendant SCEA's defenses in its motion were "new" in the sense that SCEA never disclosed them in discovery up until filing of the motion. Defendant SCEA makes no assertion that Plaintiffs' experts are opining on completely different issues than the "general scheme" of their previously disclosed reports.

Especially in cases involving complex patent litigation, the rationale of *McHugh* allows experts to aid the court by elaborating on their own opinions or by rebutting an opposing expert's opinion, as long as those opinions are based upon the "general scheme" of their previously disclosed reports. In Defendant SCEA's view, before an expert could respond to an

11

opposing expert's opinion in greater specificity, he or she would have to file an amended expert report incorporating that particular opinion. Furthermore, *McHugh* recognizes that there is a "reality of the adversarial process" where parties must have a certain reasonable flexibility to act and to react in their argumentation. 37 Fed. Appx. at 735.

Even if this Court were to impose such a strict standard upon the experts in this instance, Defendant SCEA has not shown how the declaration of Dr. Jamin has specifically prejudiced them for the purposes of summary judgment. In *Ferriso*, the prejudice was much more apparent since the expert announced her intention at her deposition to testify at trial on a completely different area five (5) months before trial. Even the court in *Ferriso* did not completely bar the expert opinion, suggesting that the plaintiff's expert still could submit an amended report before trial expressing the new opinion area. 1995 WL 580197, at *2-3. If Plaintiffs' case survives summary judgment, under FRCP 26(e), both parties still would have the opportunity to amend their expert reports up until thirty (30) days before trial or up to whatever deadlines that the Court would set. Before the case would proceed to trial, the Court would require final amended expert reports that would encompass all opinions to be expressed in the testimony.

The addition of a cite to a different portion of the '125 patent did not change the opinion that Dr. Jamin had previously offered concerning the voice and data signals. Even assuming *arguendo* that the declaration did constitute a new opinion, Defendant has not shown prejudice or unfair surprise by admission of the statements. *See Cetlinski v. Brown*, 91 Fed. Appx. 384, 391 (6th Cir. 2004) (unpublished) (noting that plaintiffs were not unfairly prejudiced because they did not disagree with the expert testimony and were not surprised by the testimony because it went to the heart of the case). Dr. Jamin's assessment that a person of ordinary skill in the art

12

could perform the tasks described in the patent should not be deemed "a departure from the general scheme of his report." *McHugh*, 37 Fed. Appx. at 736. Defendant SCEA's claim that Plaintiffs' experts are creating a "moving target" for the purposes of creating a genuine dispute of material fact is therefore unfounded. Therefore, the Court finds that Paragraphs 6, 8, and 9 may be properly considered in Plaintiffs' opposition to summary judgment.

    2.  *Dr. Xydis*

Defendant SCEA makes a similar argument concerning Dr. Xydis' declaration. Defendant contends that Paragraphs 4, 5, 8, and 9 the Xydis Declaration constitute "new" opinions not previously disclosed in his Rule 26 reports. In particular, Defendant SCEA challenges Paragraphs 4, 5, and 8, on the ground that Dr. Xydis never previously expressed an opinion on the relationship between TDM and FDM. Plaintiffs respond that Defendant SCEA never disclosed this defense the "TDM" defense in its answer or during discovery and that it properly included Dr. Xydis' opinion to rebut this new asserted defense.

In Paragraph 4, Dr. Xydis states that "[i]n both FDM and TDM, two or more signals are transmitted over a communication medium at the same time. Simultaneous transmission of two or more signals over the same communication link *i.e.* the sharing of the communication link, is the essence of "multiplexing." Dr. Xydis then notes the definition of "multiplexing" from the Microsoft Computer Dictionary. *Id.* Similarly, in Dr. Xydis' deposition, he states the following:

  Q:  In a time division multiplex system are the samples transmitted sequentially in time?
  A:  The samples are transmitted sequentially in time.
  Q:  And while I think you've indicated you think it's irrelevant, there is some time between those samples?
  A:  It is irrelevant to the information being communicated. That's the point.

Q: Okay.
A: That's why it works.

Q: But between the sequentially transmitted samples there is some time?
A: Well, we're not talking about multiplexing or how samples are communicated. At least that's not the question you asked.
Q: That's true.
A: What you asked was how information can be – I though what you asked, and perhaps correct me if I'm incorrect, I thought you had asked how information can share a communications channel at the same time. And I answered that question.
Q: And what I'm asking now is if between two samples, a voice sample, for instance, and a data sample, for instance, there is some time existing between those samples on the medium?
A: There – there – yeah, there is time, – there is time between those two samples. My definition, by the way, is one that I was taught as an undergraduate at Northwestern. I mean this is not rocket science. [You] can find it in a dictionary, one of those technology dictionaries, I believe even the Microsoft dictionary, but I'm not sure. I've looked it up recently in the dictionary, just to confirm my understanding.

(Xydis Dep. 36-38).

In Paragraph 5 of his declaration, Dr. Xydis describes how TDM signals function. The following testimony was elicited during Dr. Xydis' deposition:

Q: Could you describe for me, the concept [of time division multiplexing]?
A: In [TDM] two signals are – can be transmitted at the same time using the same communications medium.
. . . .
Q: And how are those two signals coexisting on the same communications medium?
A: In the context of what we're talking about here, I believe, those signals are represented by samples, and then those samples are conveyed in an interleave fashion to remote source and then reconstructed.
Q: What do you mean by interleaved fashion?
A: I mean that they're transmitted at the same time, but the time in between samples is utilized to send other data.
. . . .
So the signals are transmitted simultaneously and they utilize the same communications medium.

(Xydis Dep. 34, 36). In Paragraph 5, Dr. Xydis concludes his explanation of how the TDM

14

signals function with, "[i]n this fashion, the signals are transmitted simultaneously." (Def.'s Mem. Supp. Mot. Ex. 2 at 2).

In Paragraph 8, Dr. Xydis explains why FDM and TDM are equivalent alternatives for multiplexing. Similarly, in his deposition, Dr. Xydis states:

> A:  ...So methods of multiplexing can be applied – frequency domain multi-flexing can be applied, as can time domain multiplexing be applied.
> Q:  So it's your position that two frequency domain based signals can be time division multiplexed?
> A:  Certainly.

(Xydis Dep. 31).

Finally, Defendant SCEA states that Paragraph 9 of Dr. Xydis' declaration provides his "belated opinion concerning the operability of the voice over data circuit claimed in the '125 patent." (Def.'s Mem. Supp. Mot. 5). As Plaintiffs note, Dr. Xydis addressed this issue in his May 12, 2005 rebuttal report:

> On page 14, Dr. Lucky challenges the accuracy of claim 39:
>
>> If voice has been filtered from the communications signal, how can "both" be transmitted to the modem?
>
> As set out in Dr. Jamin's report on infringement, the defendants each use a microprocessor circuit to process voice and data signals. As described above, the '125 patent describes the use of a microprocessor to handle the voice over data function:
>
>> Alternatively, in FIG. 3, the voice over data circuit 134 includes a microprocessor 170.
>
> In his report on infringement, Dr. Jamin describes how the defendants' microprocessors (1) filter incoming voice signals from communication signals and (2) transmit outgoing voice and communication signals to the modem, meeting the language of claim 39.

(Pls.' Resp. Ex. M at 8-9). Therefore, the Court finds that Paragraph 9 does not encompass a new

opinion not previously expressed in a Rule 26 report.

For the same reasons cited in reference to Dr. Jamin, the Court finds that the declarations in Paragraphs 4, 6, and 8, in this instance, is permissible. Furthermore, Defendant SCEA does not demonstrate how these statements would be specifically prejudicial for the purposes of summary judgment. Under McHugh, Dr. Xydis is not testifying outside of the "general scheme" of his report and is arguably responding to a previously undisclosed defense by Defendant SCEA. Therefore, the Court does not strike these declarations

### B.     Motion to Substitute Expert and Motion to Add Expert Report

Plaintiffs' Motion to Substitute Expert and Motion to Add Expert Report arise from the tragic death of Plaintiffs' expert Dr. Thomas Xydis in an automobile accident on August 9, 2006.

In this case, Plaintiffs have submitted expert reports from Dr. Sugih Jamin and Dr. Xydis on the validity and infringement claims. Specifically, Dr. Xydis has submitted the following reports and declarations:

(1)     March 27, 2005: Communication Coupler Infringement Report (Six Pages);
(2)     May 12: 2005: Rebuttal of Dr. Lucky's Invalidity Report (Twenty-Two Pages);
(3)     August 11, 2005: Declaration on Multiplexing Techniques (Five Pages);
(4)     August 4, 2006: Declaration on SIMNET (Twenty-Four Pages).

Plaintiffs move this Court (1) to allow the substitution of Dr. Thomas Matheson for Dr. Xydis and (2) to permit the introduction of Dr. Matheson's new expert report. Plaintiff also included Dr. Matheson's 176-page expert report in its motion. In support of their position, Plaintiffs argue that the Magistrate Judge had allowed Defendants to permit additional SIMNET discovery after discovery in the case had closed. Plaintiffs further claim that there is no undue delay in submitting the report.

Defendants Sony Corporation Entertainment America and Microsoft Corporation

("Defendants") both filed briefs in opposition. Defendants essentially argue that if Dr. Matheson is indeed substituted for Dr. Xydis, Dr. Matheson should be limited to expressing the expert opinions and reports submitted by Dr. Xydis. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, No. 86-2457, 1991 WL 205691 (D. Kan. Sept. 23, 1991) (unpublished). In particular, Defendants contend the following: (1) that Dr. Matheson's expert report goes beyond the scope of Dr. Xydis's opinions; (2) that Dr. Matheson's incorporation of Dr. Jamin's infringement reports are cumulative or duplicative; and (3) that since Dr. Matheson's report is being introduced to rebut both Defendants' summary judgment motions, it would cause Defendants prejudice, result in a delay in the proceedings, and cost time and resources.

This Court has considered the parties' arguments carefully. However, since the record for summary judgment purposes is closed, the Court will not allow the substitution of Dr. Matheson or the addition of his expert report. The Matheson report will not be sent to the Special Master for consideration with regard to the Defendants' Motion for Summary Judgment.

### III. CONCLUSION

For the reasons stated above, the Court:

(1) **DENIES** Defendant SCEA's Motion to Strike Exhibit E & K;
(2) **GRANTS** Defendant SCEA's Motion to Strike Exhibit J;
(3) **DENIES** Defendant SCEA's Motion to Strike Portions of the Declarations of Dr. Jamin and Dr. Xydis;
(4) **DENIES** Plaintiffs' Motion to Substitute Expert
(5) **DENIES** Plaintiffs' Motion to Add Expert Report

**SO ORDERED.**

> s/Paul D. Borman
> PAUL D. BORMAN
> UNITED STATES DISTRICT JUDGE

17

Dated:  October 13, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 13, 2006.

                                              s/Denise Goodine
                                              Case Manager