UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**PETER A. HOCHSTEIN, et al.,**

        *Plaintiffs,*

vs.

**MICROSOFT CORPORATION,**

        *Defendant.*

HONORABLE PAUL D. BORMAN
MAGISTRATE JUDGE DONALD A. SCHEER
CIVIL ACTION NO. 04-73071

**JURY TRIAL  REQUESTED**

---

| | | |
|---|---|---|
| MARK A. CANTOR | (P32661) | DAVID T. PRITIKIN |
| THOMAS A. LEWRY | (P36399) | RICHARD CEDEROTH |
| JOHN S. LE ROY | (P61964) | LAURA L. DONOGHUE |

**BROOKS KUSHMAN P.C.**
1000 Town Center
Twenty-Second Floor
Southfield, Michigan  48075
(248) 358-4400

*Attorneys for Plaintiffs*

**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL  60603
(312) 853-7000

*Attorneys for Defendant*

---

# HOCHSTEIN'S MOTIONS *IN LIMINE*



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

## **TABLE OF CONTENTS**

No. 1 - Reexamination of the '125 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

No. 2 - Prior Art Not Disclosed In A Claim Chart . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

No. 3 - Claim Constructions The Court Rejected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.       Limiting The "Voice Over Data" Circuitry To "Analog"
                Circuitry Which Uses A "Telephone" Connection To Communicate . . . . . . . . 4

        B.       Limiting The Claimed "Modem" To A Particular
                Location Vis-a-Vis Other Claim Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.       Limiting The Invention To A "Peripheral" Device . . . . . . . . . . . . . . . . . . . . . . 7

No. 4 - Testimony By Robert Moline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

No. 5 - No Limitation on Number of Infringing Units By Number of Headsets Sold . . . . . . . . 9

No. 6 - SIMNET . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

No. 7 - Opinions Not Expressed In Dr. Macedonia's Opening Expert Reports . . . . . . . . . . . . 12



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

Pursuant the Scheduling Order entered today (Doc. No. 265), Hochstein respectfully submits the following motions *in limine* in advance of trial scheduled for August 11, 2008. Pursuant to L.R. 7.1, the parties conferred on the items enumerated below on July 21, 2008 in a good-faith effort to resolve the identified evidentiary matters. Although concurrence was not obtained, the parties agreed to genuinely cooperate to resolve as many of the disputes as possible. Any resolutions achieved before response briefs are due will be reflected in Microsoft's response.

The following evidentiary issues are presented in no particular order.

**No. 1 - Reexamination of the '125 Patent**

This case was filed in August 200**4**. On April 30, 200**8**, Microsoft submitted an *ex parte* request for reexamination of the '125 patent to the U.S. Patent Office. On May 14, 2008, the Patent Office granted Microsoft's request. The Patent Office has not issued a formal Office Action on the merits of the reexamination, however, and Hochstein has not had his opportunity to respond to any Office Action that may be issued.

Microsoft recently Bates-labeled and produced copies of its request for reexamination, and the Patent Office's decision to grant the reexamination. Presumably, Microsoft intends to rely on these materials at trial. Permitting Microsoft to do so, however, would unfairly prejudice Hochstein because the Patent Office has issued no formal Office Action on the merits. The Patent Office's decision to grant the reexamination is not a decision on the merits, and was based entirely on Microsoft's characterization of the prior art submitted in its original request.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

Hochstein had no voice in Microsoft's request, and Hochstein disagrees with Microsoft's characterization of the prior art it cited.

To submit evidence of a pending reexamination will be prejudicial and confusing to the jury. There would have to be expert testimony on reexamination procedures for the jury to have any context, and the jury would be speculating as to how the Patent Office would finally resolve the issue, because neither the Patent Office nor Hochstein have spoken on the merits of the reexamination. Courts that have considered this issue where a reexam at its infancy, have excluded it from the jury. *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 846 F.Supp. 542, 547 (S.D.Tex.1994) *aff'd* 78 F.3d 1575 (Fed. Cir. 1996) ("the Court properly excluded evidence of preliminary reexamination findings by the patent office as having little or no probative value, and as being overly prejudicial"); *Edizone, L.C., v. Cloud Nine*, 2008 U.S. Dist. LEXIS 41258 at *3-*4 (Dist. Utah 2008), *see also, Hoechst Celanese Corp. v. BP Chemicals LTD.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("We take notice that the grant by the examiner of a request for reexamination is not probative of unpatentability.")

Also, there is no reason why Microsoft waited so long to file this reexamination. They gave known about this prior art since at least June 2005, and only filed the reexam just before trial so it wouldn't be resolved when the case went before the jury. Microsoft's timing is highly suspect and smacks of gamesmanship.

Microsoft's request for reexamination, and the Patent Office's decision to grant Microsoft's request should be excluded from evidence in this case.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

**No. 2 - Prior Art Not Disclosed In A Claim Chart**

In plaintiffs' first set of interrogatories to Microsoft served in November 2004, plaintiffs requested that Microsoft provide them with a "claim chart" setting forth on a limitation-by-limitation basis Microsoft's contention that the asserted claims of the '125 patent are invalid over prior art. In its original invalidity expert report, Microsoft provided Hochstein with claim charts on certain prior art references that Microsoft contends establish the invalidity of the '125 patent. In December 2007, Microsoft served a supplemental expert report articulating Microsoft's current invalidity contentions with respect to the asserted claims of the '125 patent. That supplemental report includes claim charts setting forth Microsoft's invalidity position with respect to specifically identified U.S. patents.

Hochstein does not object to Microsoft's reliance on the patents specifically identified in its claim charts. However, Microsoft's December 2007 expert report, and its earlier reports, make reference to a litany of *other* alleged prior art documents and systems. For example, Microsoft's December 2007 supplemental report makes reference to "SIGSALY," a "Semi-automatic Ground Environment," "ARPANET," "maze war," "network voice protocol," "GameNet," "GETSET," "Xtrek," and many other "things" for which no claim chart was ever provided.

None of these "things" are compared on a limitation-by-limitation basis to the asserted claims of the '125 patent. Evidence concerning these "things" should be excluded under Rules 402, 403, and 702 because: (a) Microsoft did not provide Hochstein with a claim chart setting forth on a limitation-by-limitation basis exactly where these things are found in the prior



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

art under 35 U.S.C. § 102 or § 103, (b) introduction of evidence concerning these things will confuse the jury as to what Microsoft's true invalidity defenses are and overly complicate the presentation of evidence in this case, (c) introduction of evidence concerning these things will mislead the jury into believing that the presence of these things in the prior art somehow invalidates the asserted claims when, in fact, they do not, and (d) it is a needless presentation of cumulative evidence because Microsoft indeed has prior art patents that it contends, on a limitation-by-limitation basis, invalidate the asserted claims under 35 U.S.C. §§ 102/103.

**No. 3 - Claim Constructions The Court Rejected**

    *A.    Limiting The "Voice Over Data" Circuitry To "Analog" Circuitry Which Uses A "Telephone" Connection To Communicate*

During the summary judgment phase of this case, Microsoft and Sony presented the Court with a litany of claim terms to be construed. The Court appointed Special Master Professor Janicke to prepare a Report and Recommendation on the defendants' motions, which he did on January 26, 2007 (Doc. No. 257). The Court adopted Professor Janicke's Report in its entirety on October 25, 2007 (Doc. No. 241).

On December 27, 2007, and again on June 12, 2008, Microsoft served supplemental expert reports of its technical expert, Dr. Macedonia. Dr. Macedonia offers opinions in those reports that ignore or are directly contrary to the findings in Professor Janicke's Report which the Court adopted.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

For example, one of Dr. Macedonia's positions expressed in his reports is that the asserted claims are limited to a *telephone-based* system for communicating *analog* voice and data frequencies:

- "The disclosed circuit in '125 is an *analog means of mixing modem signaling and voice frequencies over the Plain Old Telephone* Service (POTS) phone line." (12/27/07 Report at 5.)
- "The '125 patent refers to and is dependent on *an archaic modem standard - the Bell 103 system - which uses frequency shift keying*" (*Id.*)
- "[T]he entire scheme described in '125 is based on an *analog POTS [Plain Old Telephone* Service] *transmission medium.*" (5/12/05 Report at 20.)
- "The system disclosed and claimed in the '125 patent is a *telephone-based system*" (6/12/08 Report at 1.)

(Emphasis added.)

This argument was the central issue in the defendants' first round of summary judgment motions, and was rejected by Professor Janicke because the '125 patent expressly discloses, and the asserted claims cover, a *digital* microprocessor-based system for handling the voice-over-data functions that may be used to communicate voice and data signals over the Internet:

- "A **microprocessor 170 is disclosed for handling the voice-over-data functions**." (Special Master's Report, ¶ 33)
- "The Fig. 3 embodiment employs **a microprocessor to handle these mixing and separating functions**." (Special Master's Report, ¶ 17)
- "**No specific kind of multiplexing is necessary**." (Special Master's Report, ¶ 39)



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

- "[T]hese claims would be infringed when the user connects his modem (if not built-in), loads a chat-enabled game disc into the console, and activates it for remote play **via the Internet**." (Special Master's Report, ¶ 91)

(Emphasis added.)

The '125 patent expressly states that, although telephone lines can be used for communication of the voice and data signals, the '125 invention is **not** limited to a telephone-based system:

> "In the preferred embodiment, the transmitting medium is the telephone system 110, represented in the Figures as a telephone line 110. It should be obvious to those skilled in the art that **any medium of transmission**, i.e., radio waves, would be suitable for the subject invention 100 . . . ."

('125 Patent, col. 4, lines 12-14.)

### B.   Limiting The Claimed "Modem" To A Particular Location Vis-a-Vis Other Claim Limitations

Another one of Dr. Macedonia's inconsistent positions is that the claims are limited to a particular location for the claimed "modem" vis-a-vis other components of the claimed circuitry:

- "*If there were a modem, it would be placed at the access point to the Internet connection and not in the middle of the apparatus as shown in the patent* (where only game data pass through the modem)." (6/12/08 Report at 3.)

- "Dr. Matheson opines that the claims do not require any particular location for the claimed subject matter. *I disagree. As explained in my prior reports, a person of skill in the art*



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

>   *would conclude that the claims do require a particular configuration*" (*Id.*)

(Emphasis added.)

Defendants raised this issue at summary judgment, and it was squarely rejected by Professor Janicke:

- "While it is true that in the arrangements shown in Figs. 2 and 3 the voice-over-data circuit is outboard of the modem, there is no requirement in claim 39 that such an arrangement be used. (Special Master's Report, ¶ 60.)

- "[C]laim 39 is not restricted to any particular configuration of the recited elements. (Special Master's Report, ¶ 70.)

Claim construction is a matter of law for the Court, and the Court (via Professor Janicke) construed the asserted claims during the summary judgment phase of this case. Microsoft should be precluded form introducing any evidence, opinion testimony or argument inconsistent with Professor Janicke's claim constructions, which this Court has adopted in their entirety.

### C.   Limiting The Invention To A "Peripheral" Device

Dr. Macedonia, repeatedly mischaracterizes the invention recited in the asserted claims as a "peripheral" device that is separate from the video game console. For example, in his 5/12/05 rebuttal to Hochstein's infringement report, Dr. Macedonia stated:

- "The assembly (100) is a *peripheral* device separate from the host video game computer and the player controls (for example, an input devices such as a keyboard, gamepad, or joystick)." (p. 16.)

- "It is apparent from the '125 patent's description of the preferred embodiment that the scheme is to provide a 'virtual input' to the remote *peripheral* through the 'control means.'" (p. 16.)



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

- "The *peripheral* takes the data from the input device and diverts it across a telephone line to a remote assembly."  (p. 16.)

- "the joystick signals are communicated directly to the remote *peripheral* via the telephone line" (p. 16.)

- "The 'player port logic circuits (108, 124)' in '125 interface the *peripheral* assembly to the game console, presumably for a Super Nintendo Entertainment System."  (p. 61.)

(Italics added.)

Microsoft attempted to limit the asserted claims to a "peripheral" in its 2005 motion for summary judgment of non-infringement:

> The '125 patent proposes an electrical *peripheral* device that connects the player's joystick to the video game console - with the remote player playing via a telephone line connected between like *peripherals*.  5:4-14, Fig. 2. This *peripheral* device intercepts a player's controller inputs *(e.g.,* joystick movements), 3:56-61, converts those inputs into a format suitable for transmission via a modem over a telephone line, 3:56-61, 4:1-5, passes the converted inputs through a modem, 4:40-41, combines the modem output with voice signals, 6:3-8; Fig. 2, and sends the combined signal over a telephone line to the remote player's *peripheral*, 6:3-8; Fig. 2.

(Doc. No. 73 at 10 of 29, italics added.)

The asserted claims of the '125 patent make no mention of any "peripheral" device. In fact, the term "peripheral" is not mentioned anywhere in the '125 patent.  In construing the asserted claims, Professor Janicke made no mention of any "peripheral" limitation.

When Microsoft's accused Xbox and Xbox 360 video game consoles are combined with a modem and a voice-chat enabled video game, that assembly meets the limitations of the asserted claims as construed by the Special Master and this Court — regardless of whether any



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

"peripheral" is used or not. With the addition of his self-proclaimed "peripheral" limitation of the '125 invention, Microsoft's expert hopes to confuse the jury into thinking that only an externally-connected "peripheral" device (*i.e.* not the video game console itself) can infringe the asserted claims. This litigation-induced claim construction argument has no basis in the '125 patent and has been appropriately rejected by Professor Janicke and this Court as discussed above.

Microsoft should be precluded from presenting testimony or evidence at trial that the asserted claims are limited to a "peripheral" device, or that infringement is somehow avoided if no peripheral device is present.

### No. 4 - Testimony By Robert Moline

In the Joint Final Pretrial Order, Microsoft identifies Mr. Robert Moline as an expert witness who will testify at trial. Microsoft never served plaintiffs with a Rule 26 expert report from Mr. Moline and has never disclosed the substance of his testimony. Accordingly, Hochstein requests that he be precluded from testifying at trial in this case.

### No. 5 - No Limitation on Number of Infringing Units By Number of Headsets Sold

Hochstein's patent claims are apparatus claims, *i.e.*, they cover a specific arrangement of parts. Microsoft's accused Xbox and Xbox 360 consoles do not *directly* infringe the '125 patent. Instead, Microsoft actively *induces* infringement because it knowingly encourages its customers to combine the Xbox and Xbox 360 console with other parts that are claimed in the '125 patent. More specifically, Microsoft, with full knowledge of Hochstein's patent rights,



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

instructs its customers to connect the Xbox and Xbox 360 console to a "modem" and install video games that enable the user to simultaneously play and talk with remote users. This combination of the Xbox and Xbox 360 console, modem and game infringes regardless whether the user actually takes advantage of the voice capabilities. *Intel Corp. v. U.S. Int'l. Trade Comm'n.*, 946 F.2d 821, 832 (Fed.Cir. 1991); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336 (Fed.Cir. 2001).

Because this is an inducement case, Hochstein's damages are limited to the number of infringing Xbox and Xbox 360 -online game-modem combinations, *i.e.* the number of Microsoft customers that actually use their Xbox and Xbox 360 video games online. Microsoft has data which records these statistics.

The Special Master and this Court have already held that Hochstein's damages are **not** limited to the number of customers that connect a headset to the video game console because the headset is not recited in the asserted claims of the '125 patent.[1] Nonetheless, in her expert

---

[1]   **91.**   I can find nothing in the claims that limits them to having any connected audio equipment. For example, no microphones or speakers are recited in the claims. What the claims do call for is circuitry for handling voice signals and game-command communication signals. As such, these claims would be infringed when the user connects his modem (if not built-in), loads a chat-enabled game disc into the console, and activates it for remote play via the internet. Infringement would be completed regardless of the presence or absence of audio gear at that moment.
**92.**   For the foregoing reasons, I recommend that the court reject SCEA's argument that its damages exposure should be limited to consoles sold with headsets.

(Special Master's Report.)

**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

-10-

report, Microsoft's damages expert, Ms. Elsten, attempts to limit the number of infringing units by the number of headsets Microsoft has sold for its Xbox consoles:

> I conclude that determination of a reasonable royalty in this case would be limited to the XboxLive Communicator Modules[2] and Headsets, including those contained within starter kits and those sold as standalone peripherals, sold in North America.

(Ms. Elsten's May 13, 2005 Report at p. 33.)

Because this Court has already rejected this damages limitation on summary judgment, the Court should enforce that ruling precluding Microsoft from by arguing, or otherwise presenting evidence or testimony at trial, to limit the number of infringing combinations at issue in this case by the number of headsets Microsoft has sold for its Xbox and Xbox 360 consoles.

**No. 6 - SIMNET**

After the close of discovery in this case, Microsoft unilaterally elected to pursue "SIMNET" as an invalidity defense. SIMNET became Microsoft's lead invalidity defense during summary judgment, which resulted in a one-year delay, a second round of summary judgment briefing, and tremendous investment of Hochstein's and the Court's (and the Special Master's) time and resources. SIMNET was a massive military training project that, to say the least, was nothing like Hochstein's video game invention. Professor Janicke allotted over 140 paragraphs of his analysis to SIMNET (¶¶ 93-135), and rejected Microsoft's SIMNET defense.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

---

[2] The "Communicator Module" is the device that is used to plug a traditional headset into the Xbox player control.

Microsoft knows that SIMNET is not a viable prior art defense — in one of its recently-filed briefs, Microsoft quotes this Court's statement from the January 9, 2008 pretrial conference: "I thought [SIMNET] was long gone . . . I though that got buried a long time ago." (Doc. No. 262 at 12.) Nonetheless, Microsoft refuses to eliminate SIMNET documents and witnesses from its list of exhibits and trial witnesses.

Any evidence concerning SIMNET will only confuse the jury and consume valuable time and resources at trial.

For these reasons, Microsoft should be precluded from introducing evidence, argument or testimony at trial concerning SIMNET.

### No. 7 - Opinions Not Expressed In Dr. Macedonia's Opening Expert Reports

In its opposition to Hochstein's motion *in limine* to <u>in</u>clude Dr. Matheson's expert analysis, Microsoft took the extreme position that any opinions not expressed in an expert's original report (from 2005) must be excluded. As detailed in Hochstein's motion (Doc. No. 260), the Court ruled that the deadline for amendment of expert reports was 30 days before trial. (Doc. No. 205 at 12.) Both parties have proceeded under this ruling.

If the Court agrees with Microsoft and excludes any of Dr. Matheson's expert testimony, the same rule must be applied to Microsoft's experts. Specifically, the Court must exclude non-infringement and invalidity opinions not detailed in Dr. Macedonia's first expert reports.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

As an example, in a ***non-infringement*** report that Dr. Macedonia called a "rebuttal" report, he adopted wholesale — without any analysis — the ***invalidity*** analysis of a Sony expert witness, Dr. Lucky.  Dr. Macedonia's discussion is reproduced below:

> I note that I have reviewed the three Japanese prior art references (Watanabe, Miyazawa, and Shimamoto) that Dr. Lucky cited in his March 28 report.  I agree with Dr. Lucky's analysis regarding these references and incorporate his analysis by reference.

(Dr. Macedonia's 6/20/05 Report at 38.)

This conclusory statement is insufficient under Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702.  *Greenwell v. Boatwright*, 184 F.3d 492, 501 (6th Cir. 1999) ("Even before the Supreme Court's landmark decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), we required judges, to give a "hard look" and carefully assess the scientific conclusions and reasoning of experts because jurors are frequently overly impressed by conclusory opinions of scientific experts paid by a party.")  Moreover, Dr. Macedonia's first invalidity report served March 28, 2005 made no reference to these Japanese references, or **any** of Dr. Lucky's analysis for that matter.[3]

As another example, on  December 27, 2007—more than **two years** after his opening report— Dr. Macedonia introduced two brand new invalidity defenses based on prior art that he identified for the first time on December 27, 2007and other new defenses under 35 U.S.C. § 112:



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

---

[3] Likewise, Dr. Macedonia's first non-infringement expert report served May 12, 2005 contained no discussion of Dr. Lucky's Japanese references.

- "Thus, to the extent Plaintiffs apply claims 15 and 39 to cover the communication of game state information, *claims 15 and 39 are invalid for lack of sufficient written description*."

- "Thus, to the extent Plaintiff's [*sic*] apply claims 15 and 39 to cover the communication of game state information, *claims 15 and 39 are invalid for lack of enablement*."

- GETSET

- GameNet

- SIGSALY

- Network Voice Protocol

- Clifford Weinstein and James Forgie, IEEE JOURNAL ON SELECTED AREAS IN COMMUNICATIONS, VOL. SAC-1, NO. 6, DECEMBER 1983 963, *Experience with Speech Communication in Packet Networks*.

- Robert W. Lucky, IEEE Communications, November 1979, p. 14, *Gamenet*.

- G.D. BERGLAND, IEEE Communications, November 1982, *Experiments in Telecommunication Technology*.

- Sun SPARCstation

- *Sun's SPARCstation 1: a workstation for the 1990s, Bechtolsheim*, A.V.; Frank, E.H. Compcon Spring, Digest of Papers. Thirty-Fifth IEEE Computer Society International Conference. Volume, Issue 26 Feb-2 Mar 1990 Page(s):184 - 188.

- vtalk, including "message and source code"

It was not until just **last month** that Dr. Macedonia introduced more new invalidity opinions and analysis concerning the following items:

- "OKI integrated circuit"

- "OKI published documentation"



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

- "OKI brochure"

- Miyazawa invalidity analysis

If Microsoft wants to limit experts to the content of their initial reports in this four year old case, Microsoft must live with those same limitations. Accordingly, if the Court excludes any of Dr. Matheson's opinions, Dr. Macedonia's initially undisclosed opinions must be excluded as well.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By: /s/ John S. Le Roy
MARK A. CANTOR     (P32661)
THOMAS A. LEWRY   (P36399)
JOHN S. LE ROY       (P61964)
1000 Town Center — 22nd Floor
Southfield, Michigan 48075-1238
Tel: (248) 358-4400 — Fax: (248) 358-3351

*Attorneys for Plaintiffs*

Dated: July 21, 2008



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

CERTIFICATE OF ELECTRONIC SERVICE

      I hereby certify that on **July 21, 2008**, I electronically filed the foregoing **HOCHSTEIN'S MOTIONS *IN LIMINE*** with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing: Mark A. Cantor, Robert J. Franzinger, William F. Kolakowski, III, John S. Le Roy, Thomas A. Lewry, Marc Lorelli, Douglas C. Salzenstein, and Richard E. Zuckerman.

      I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System:

    Richard Cederoth
    **SIDLEY AUSTIN LLP**
    One South Dearborn
    Chicago, Illinois  60603
    (312) 853-7000

    **BROOKS KUSHMAN P.C.**

    By:   /s/ John S. Le Roy
    MARK A. CANTOR          (P32661)
    THOMAS A. LEWRY         (P36399)
    JOHN S. LE ROY          (P61964)
    1000 Town Center — 22nd Floor
    Southfield, Michigan 48075-1238
    Tel:  (248) 358-4400
    Fax:  (248) 358-3351

    *Attorneys for Plaintiffs*



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

-16-