IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER A. HOCHSTEIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 04-73071 |
| vs. | ) | Honorable Paul D. Borman |
| | ) | Magistrate Judge Donald A. Scheer |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | Microsoft's Motion In |
| | ) | Limine # 2 |

**MICROSOFT'S MOTIONS *IN LIMINE* REGARDING IMPROPER
TESTIMONY, ARGUMENT, AND EXHIBITS
ON LIABILITY ISSUES**

Plaintiffs should be precluded from presenting any testimony or other evidence, or any argument, concerning the issues identified below that are irrelevant or otherwise improper to put before a jury on issues of liability.[1]  These issues are:

  A.  Exclude Mr. Rappaport's arguments regarding objective evidence of non-obviousness.

  B.  Preclude Plaintiffs from arguing that Microsoft had knowledge of the '125 patent prior to the filing of this suit or copied the purported invention.

  C.  Preclude argument or testimony on pre-suit inducement of infringement and damages.

  D.  Preclude Plaintiffs from taking any positions contrary to or inconsistent with those taken before the Special Master.

  E.  Preclude Plaintiffs from arguing that evidence of demand for voice chat in Nintendo's Wii shows long felt need for Plaintiffs' invention.

---

[1] Microsoft has filed several additional motions *in limine* regarding particular liability issues, including Motions *in Limine* Nos. 3, 4, and 5.

## STATEMENT RE: CONCURRENCE

Pursuant to Local Rule 7.1(a), concurrence in the relief requested was sought by counsel for Microsoft from counsel for Plaintiffs by email dated July 7, 2008. Counsel for Microsoft did not receive a response from Plaintiffs and have not obtained concurrence in the relief sought.

Respectfully submitted,

DYKEMA GOSSETT PLLC

s/William F. Kolakowski III
William F. Kolakowski (P55906)
Attorney for Defendant Microsoft Corporation
39577 Woodward Ave., Ste. 300
Bloomfield Hills, MI 48304
(248) 203-0822
wkolakowski@dykema.com

Dated: July 21, 2008

**MEMORANDUM IN SUPPORT OF MICROSOFT'S
MOTIONS *IN LIMINE* REGARDING IMPROPER
TESTIMONY, ARGUMENT, AND EXHIBITS
ON LIABILITY ISSUES**

**INTRODUCTION**

Plaintiffs should be precluded from presenting any testimony or other evidence, or any argument, concerning the issues identified below that are irrelevant or otherwise improper to put before a jury on issues of liability.[2] These issues are:

  A. Exclude Mr. Rappaport's arguments regarding objective evidence of non-obviousness.

  B. Preclude Plaintiffs from arguing that Microsoft had knowledge of the '125 patent prior to the filing of this suit or copied the purported invention.

  C. Preclude argument or testimony on pre-suit inducement of infringement and damages.

  D. Preclude Plaintiffs from taking any positions contrary to or inconsistent with those taken before the Special Master.

  E. Preclude Plaintiffs from arguing that evidence of demand for voice chat in Nintendo's Wii shows long felt need for Plaintiffs' invention.

**ARGUMENT**

**A. Mr. Rappaport's Arguments Regarding Objective Evidence of Non-Obviousness Should Be Excluded**

Mr. Rappaport's August 5, 2006 Supplemental Expert Report purports to address "objective evidence of non-obviousness" (Aug. 5, 2006 Rappaport Supp. Rpt., Khan Declaration Ex. N at 2). Section C of that Report, entitled "Objective Evidence Of Non-Obviousness", is virtually a verbatim reproduction of the section in Dr. Jamin's May 11, 2005 Rebuttal Report entitled "Secondary Considerations Of Non-Obviousness." Indeed, Mr. Rapport expressly admits that his non-obviousness section is "reproduced from pp. 10-15 of Dr. Jamin's May 11,

---

[2] Microsoft has filed several additional motions *in limine* regarding particular liability issues, including Motions *in Limine* Nos. 3, 4, and 5.

3

2005 report." Mr. Rappaport's entire august 5, 2005 Supplemental Expert Report, and particularly Section C of that report, should be struck as untimely, highly prejudicial to Microsoft, and contrary to law.

As Microsoft explained in its "Memorandum In Response To Hochstein's Motion *In Limine* To Permit Expert Testimony By Dr. Thomas Matheson", filed July 17, 2008, this Court's scheduling orders of November 8, 2004, and March 9, 2005, set a deadline of March 28,2005 under Fed. R. Civ. P. 26 for disclosure of expert witnesses and initial statements of their opinions. (Scheduling Order, Doc. No. 19, at 1; Scheduling Order, Doc. No. 26, at 1). Neither in Plaintiffs' initial expert reports in March 2005, nor in Plaintiffs' rebuttal expert reports in May 2005, was Mr. Rappaport identified as an expert witness on objective evidence of non-obviousness. It was not until Mr. Rappaport submitted a "Supplemental Expert Report" on August 5, 2006, that Microsoft first became aware that Plaintiffs might be proposing to have Mr. Rappaport also address issues related to objective evidence of non-obviousness. This proposed testimony on non-obviousness contravenes the Court's orders and the Federal Rules. *See* Fed. R. Civ. P. 26(a); Fed. R. Civ P. 37(c) (requiring courts to bar evidence that does not comply with Rule 26 unless the testimony is harmless); *McHugh v. Olympia Entertainment, Inc.*, 37 Fed. Appx. 730, 736 (6th Cir. 2002) (unpublished) (Khan Declaration Ex. U) (allowing an expert to testify beyond his original Rule 26 report only where the "testimony was not a departure from the general scheme of his report").

Moreover, the fact that the section of Mr. Rappaport's August 5, 2005 Supplemental Expert Report reproduces virtually verbatim pages 10-15 of Dr. Jamin's May 11, 2005 report suggests that as with Dr. Matheson, Plaintiffs are attempting to substitute Mr. Rappaport for Dr. Jamin on these issues, notwithstanding that Dr. Jamin is alive, well, and available for trial on the

issues of infringement and invalidity (including objective evidence of non-obviousness). This substitution of Mr. Rappaport for Dr. Jamin is improper and, as shown, in violation of the Court's scheduling orders and Fed. R. Civ. P. 26. Allowing this substitution would also be prejudicial and unfair to Microsoft, which has spent years preparing a defense against the infringement and invalidity theories of Dr. Jamin. Adding to the prejudice is Microsoft's confusion as to Plaintiffs' true intentions and who will testify to what on the duplicative portions of the Jamin and Rappaport reports. The proposed Rappaport testimony on objective evidence of non-obviousness is untimely and prejudicial, and it should be barred under Fed. R. Civ. P. Rules 26 and 37, and Fed. R. Evid. 304, *Sommer v. Davis*, 317 F.3d 686, 691-692 (6th Cir. 2003) (barring testimony from untimely disclosed expert); *Vance By & Through Hammons v. United States*, 182 F.3d 920, at *3-4 (6th Cir. 1999) (unpublished) (Khan Declaration Ex. V) (holding that exclusion of untimely expert reports under 37(c)(1) is mandatory).

In his August 5, 2006 Supplemental Expert Report, Mr. Irving Rappaport also asserts that "Microsoft did not expect the success that the '125 invention would enjoy in the marketplace" and that these "[u]nexpected [r]esults [a]chieved [b]y [t]he [i]nvention" constitute objective evidence of non-obviousness. (Rappaport Aug. 5, 2006 Report, at 2, 16-17, 21-22) (Khan Declaration Ex. N.) This portion of Mr. Rappaport's testimony on objective evidence of non-obviousness should also be precluded because, as a matter of law, it misstates the legal basis for evidence of "unexpected results." The concept of "unexpected results" refers to unexpected scientific results -- not better than anticipated sales.

Unexpected results is one of the secondary considerations on which a patent holder may rely in an attempt to rebut an allegation of obviousness. *See, e.g., Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966); *Aventis Pharma Deutschland GmbH v. Lupin, Ltd.,* 499

5

F.3d 1293, 1302 (Fed. Cir. 2007).  The rationale is that if the results of a particular combination of elements in the prior art were unexpected – for example, the result was unpredictable or was achieved by proceeding contrary to the accepted wisdom of the art of the time – this may be evidence that that combination was not obvious to one skilled in the art.  *See, e.g., W.L. Gore and Assoc., Inc. v. Garlock Inc.*, 721 F.2d 1540 (Fed. Cir. 1983); *In re Hedges,* 783 F.2d 1038 (Fed. Cir. 1986).  The cases make clear, however, that "unexpected results" relate to the properties of the resulting invention itself, not the reception of that alleged invention in the marketplace.  *See Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358 (Fed. Cir. 2008) (holding that the anticonvulsive activity from a certain drug combination was unexpected and thus provided objective evidence of the non-obviousness of that combination); *Aventis Pharma Deutschland,* 499 F.3d at 1302-1303 (holding that Aventis failed to show that the potency of a purified form of a drug was an unexpected result because they were comparing its potency to the wrong baseline); *Takeda Chem. Indus., Ltd. v. Alphapharm Pty.,* 492 F.3d 1350, 1362 (Fed. Cir. 2007) (affirming district court's holding that it was not expected that the claimed compound would be nontoxic and thus the patentee had effectively rebutted a *prima facie* case of obviousness with evidence of unexpected results).

Instead of addressing any unexpected properties of the claimed invention itself, under a subheading of "Objective Non-Obviousness Factor No. 5:  Unexpected Results Achieved By The Invention," Mr. Rappaport simply opines that "Microsoft did not expect the success that the '125 invention would enjoy in the marketplace."  (Khan Declaration Ex. N, at 16).  This and similar statements in his Report purporting to show "unexpected results" focus instead on commercial success and thus, as a matter of law, have nothing to do with "unexpected results" as evidence of non-obviousness.  Although the Court will later instruct the jury on what the law is with respect

6

to unexpected results, the potential for jury confusion is high if Mr. Rappaport is nonetheless allowed to testify, and present evidence, on non-obviousness on a basis totally at odds with the law.  Accordingly, his opinions on the issue of unexpected success should be excluded.

**B.     Plaintiffs Should Be Precluded From Arguing That Microsoft Had Knowledge Of The '125 Patent Prior To The Filing Of This Suit Or Copied The Purported Invention**

The Court should exclude the document at TEHC 2955, bar any mention of the document at trial, and preclude Plaintiffs from arguing that Microsoft had knowledge of the '125 patent prior to the filing of this lawsuit or copied the purported invention.

The document at TEHC 2955 is a single page from the *Thomas Register of American Manufacturers 1995* containing Microsoft's telephone/fax numbers.  (Khan Declaration Ex. O.) There are also handwritten notes on the page with a fax number, a phone number and a notation that says "sent."  *(Id.)*  There is no other information on the document, and no other document indicating any communication with Microsoft prior to the filing of the lawsuit.  The original of this document has not been produced, and Plaintiffs have never identified its origin.  Nor is there any testimony of any witness that anything was, in fact, faxed to Microsoft or that any telephone call was placed to Microsoft before this lawsuit. [3]

Plaintiffs have not been clear as to the exact use they intend to make of this document.  In Plaintiffs' answer to Request for Admission No. 6 in Microsoft's First Set of Requests for Admission, however, Plaintiffs stated that they believed that the contacts represented in the document "made Microsoft aware of Plaintiffs' rights in the '125 patent."  (*See* Pl.'s Answers to Def.'s First Set of Reqs. for Admis., Req. for Admis. No. 6) (Khan Declaration Ex. P.)  Also, Plaintiffs' expert, Dr. Matheson, opines that Microsoft "may have copied the invention as well"

---

[3] Within the last month, Plaintiffs identified a "Rochelle Metz" as a witness who would testify that she sent a fax to Microsoft prior to the 2001 introduction of the Xbox.  Ms. Metz was not identified during discovery and has not yet been deposed.

7

as part of Plaintiffs' argument that the '125 patent is not invalid for obviousness.  (Matheson May 14, 2004 Report, at 27) (Khan Declaration Ex. K.)  This charge appears immediately after Dr. Matheson's assertion that "the '125 patent was mailed to a lawyer at SCEA in 1997, before SCEA released the infringing PlayStation 2", which "suggests that SCEA copied the '125 invention." *(Id.)*  Because Microsoft could not copy an invention of which it had no knowledge, this suggests Dr. Matheson may try to rely on the document at TEHC in partial support of his copying argument as to Microsoft, just as he relied on the alleged mailing of the '125 patent to a lawyer at SCEA in 1997 to charge SCEA with copying.

Regardless of the precise use Plaintiffs may try to make of the document at TEHC 2955, the document does not provide any credible evidence that Microsoft had knowledge of the patent and infringement claims prior to the date on which this suit was filed.  Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Rule 403 should be applied here to exclude argument, based on the document at TEHC 2955, that Microsoft had knowledge of the '125 patent prior to the filing of this lawsuit.

First, as is evident on the face of the document, it does not itself contain any message; it is neither a facsimile nor a letter.  Plaintiffs claim it is evidence that Plaintiffs sent a facsimile to Microsoft at some indeterminate time in 2001.  The year 2001 nowhere appears on the document.  The document also provides no indication as to the content of any fax or letter that may have been sent in 2001, to whom the fax or letter was sent, or who transmitted such a fax or letter.

8

Second, the document provides no indication that any alleged transmittal in 2001 was successful or that Microsoft received the fax or letter.  Mr. David Gaskey, an attorney who at one time represented Plaintiffs and was responsible for sending letters to alleged infringers at the time this document was created, has admitted that he has no recollection of sending a letter to Microsoft.  (Gaskey Dep., Mar. 22, 2005, at 81-84) (Khan Declaration Ex. Q).  Discovery has not turned up any evidence that such a letter or fax was received by Microsoft, even though Plaintiffs produced copies of dozens of letters that they allegedly sent to dozens of other companies in various mass meeting efforts.

Third, in response to a Request for Admission asking Plaintiffs to admit or deny that they offered Microsoft a license prior to filing suit, Plaintiffs were unable to admit or deny that such a license was offered.  (*See* Pl.'s Answers to Def.'s First Set of Reqs. for Admis., Req. for Admis. No. 6) (Khan Declaration Ex. P.)  Instead, as previously noted, Plaintiffs simply referred to TEHC 2955 and stated that they believed that the contacts represented in the document "made Microsoft aware of Plaintiffs' rights in the '125 patent."  (*Id.*)

For the same reasons, Plaintiffs should not be permitted to allege or insinuate that Microsoft copied Plaintiffs' alleged invention as evidence of infringement.  As noted, there is no evidence that Microsoft had knowledge of the '125 patent prior to the filing of this lawsuit in August 2004.  Microsoft could not have copied an invention of which it had no knowledge.  Moreover, whether an alleged infringer copied an invention is not relevant to liability for infringement.  *See, e.g., Allen Engineering Corporation v. Bastell Industries, Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) ("While copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed."); *Blunt Wrap U.S.A., Inc. v. Royal Blunts, Inc.*, 2003 WL 30422 (E. D. La. 2003) (Khan Declaration Ex. R) ("Copying

9

may be relevant to the issue of the obviousness of the invention, but it has no bearing on the question of whether the claims of an issued patent are infringed").

The foregoing makes clear that the document at TECH 2955 has no probative value at all. Certainly it provides no evidence that prior to this lawsuit, Plaintiffs notified Microsoft of the existence of the '125 patent and Plaintiffs offer to license it. It also provides no evidence that Microsoft copied Plaintiffs' invention. Evidence is unfairly prejudicial when it "suggest[s] to the jury an improper basis for its verdict." *Paschal v. Flagstar Bank, FSB*, 295 F.3d 565, 580 (6th Cir. 2002). If Plaintiffs were permitted to refer to TEHC 2955 as evidence of notification or copying, the jury could be confused or misled to believe that this document – which actually proves nothing other than at some point someone wrote down some fax numbers – is evidence of Microsoft's knowledge of the patent. Use of a 1995 manufacturing listing (TEHC 2955, Khan Declaration Ex. O), as evidence that a letter or fax may have been sent in 2001 to prove that Microsoft had knowledge of the '125 patent prior to the filing of this lawsuit is inherently misleading.

In addition, there is no evidence that whatever document Plaintiffs claim to have sent to Microsoft by facsimile included sufficient information to give Microsoft notice of the alleged infringement, as required under Section 35 U.S.C. § 287. Section 287(a) provides that "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." (35 U.S.C. § 287(a)). For purposes of § 287(a), notice must be of the infringement, not merely notice of the patent's existence or ownership. *Amsted Industries Inc. v. Buckeye Steel*, 24 F.3d 178, 187 (C.A. Fed. 1994). Actual notice "requires the affirmative communication of a specific charge of

infringement by a specific accused product or device." *Id.  See also, Vulcan Engineering v. Fata Aluminum, Inc.* 2000 WL 34513948 at *3 (E.D. Mich. Aug. 1, 2000); *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 2008 WL 1883900 at *5 (W.D.N.Y. Apr. 22, 2008).  Whether actual notice was given is determined by focusing on the actions of the patent owner, not by focusing on the knowledge of the infringer.  *Vulcan*, 2000 WL 34513948 at *3.  *See also, Amsted*, 24 F.3d at 187.

Clearly TEHC 2955 does not meet the statutory notice requirements set forth in § 287, nor is there evidence that any other document was even sent or received by Microsoft prior to the filing of this lawsuit that would meet those requirements.  Neither TEHC 2955 nor any other document sets forth an "affirmative communication of a specific charge of infringement" and further, identifies the "specific accused product or device."  Thus, this Court should exclude TEHC 2955 as evidence that Microsoft had knowledge of the '125 patent prior to the filing of this suit or copied the alleged invention.

**C.     Plaintiffs Should Be Precluded From Advancing Arguments Or Testimony On Pre-suit Inducement Of Infringement And Pre-suit Damages**

The Federal Circuit ruled in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006), that to prove pre-suit inducement of infringement, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Id.* at 1306 (citation omitted).  The Federal Circuit further clarified that "[t]he requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." *Id.* at 1304.

As discussed in MIL #3(D) above, neither the document at TEHC 2955, nor any other document,  testimony or other evidence, shows or even comes close to showing that Microsoft

11

had knowledge of the '125 patent prior to the filing of this lawsuit.  Thus, any argument or testimony in support of, premised on, or concerning pre-suit inducement of infringement, and associated damages, would lack foundation, be irrelevant, confuse the jury, and unfairly prejudice Microsoft.  For these reasons all such argument or testimony should be excluded.  *See* Fed. R. Evid. 402, 403.

**D.      Plaintiffs Should Be Precluded From Taking Any Positions Contrary To Or Inconsistent With Those Taken Before the Special Master**

Plaintiffs should be precluded under the doctrine of judicial estoppel from presenting arguments to the jury that are contrary to or inconsistent with those taken in earlier briefing and upon which the Special Master relied in issuing his report of January 26, 2007.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895).  This long-standing doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (citing *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).  If a party were permitted to prevail on an argument at one stage and then to prevail at a later stage on a contradictory argument, the implication would be that the court got it wrong at one of those stages.  Precluding parties from taking later, inconsistent positions "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit the exigency of the moment." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990).

Earlier in this case, Microsoft and its former co-defendant, Sony, filed several motions for summary judgment. The parties briefed these motions, and the Court invited Special Master Paul M. Janicke to issue a report resolving several of them. (*See* Janicke Report, January 26, 2007) (Khan Declaration Ex. A.) The Special Master's report adopts a number of Plaintiffs arguments in reaching its conclusions. Because these arguments were successful, the doctrine of judicial estoppel now precludes Plaintiffs from taking contrary positions at trial.

Among the positions taken by Plaintiffs that were adopted by the Special Master and hence are subject to judicial estoppel, two in particular bear highlighting. These are:

(1) Plaintiffs' position before the Special Master that there is no support in the specification (including Figures 2 and 3) for "original" claim 39 besides claim 39 itself; and

(2) Plaintiffs' position before the Special Master regarding the number of embodiments disclosed by the specification.

The first of these arguments concerned the proper construction of certain terms in claim 39 of the asserted '125 patent and whether the embodiments disclosed in the specification served to limit the invention claimed in claim 39. Plaintiffs argued that because nothing in claim 39 itself limited the claimed invention to the embodiments disclosed in the specification, and because claim 39 does not include means-plus-function language that would require further support from the specification, the embodiments disclosed in the specification were not limiting to the invention claimed in claim 39. (*See* Pl.'s Opp'n to Microsoft's Mot. for Summ. J., Doc. No. 95, at 10, 16-17; Pl.'s Opp'n to Sony's Mot. for Summ. J., Doc. No. 89, at 11-13; Pl.'s Letter to Special Master Janicke, November 7, 2006, (Khan Declaration Ex. S) at 1 (stating in response to Special Master Janicke: "First, you asked if claim 39 reads on Figures 2 and 3. It does not. … [Claim 39] provides its own support for the recited arrangement."). The Special Master adopted Plaintiffs position and held that "claim 39 is not restricted to any particular configuration of the

13

recited elements."  (*See* Khan Declaration Ex. A, at ¶ 70.)  The Special Master also repeatedly stated that Fig. 2 from the specification was not limiting on claim 39.  (*Id.* at ¶¶ 69, 80, 81.)

The second of the highlighted arguments made by Plaintiffs before the Special Master is that the '125 patent's specification discloses "**two** alternative embodiments," Figures 2 and 3. (Pl.'s Opp'n to Microsoft's Mot. for Summ. J., Doc. No. 95, at 5) (emphasis in original).  In his report, the Special Master addresses only Figures 2 and 3 as possible embodiments in the specification, thus adopting Plaintiffs' position.  (*See* Khan Declaration Ex. A, at ¶ 17)[4].

Because Plaintiffs' position on each of these issues was adopted by the Special Master, Plaintiffs cannot now be permitted to argue different positions while Microsoft is held to the decisions outlined in the Special Master's Report.

### E.  All Testimony Or Other Evidence Relating To Alleged Demand For Voice Chat In The Wii Should Be Excluded

In his May 14, 2008 report, in addressing whether the '125 patent should be declared invalid for obviousness, Dr. Matheson argues that a demand for a voice chat feature in the Nintendo Wii shows that there was long felt need for the purported invention of the '125 patent. (Khan Declaration Ex. K, at 25.)  This evidence, and any testimony, regarding the Wii would be precluded because it is irrelevant to the issues of obviousness and long felt but unsolved need and would only lead to further confusion of the issues and unfair prejudice.

An important issue in this case is whether the '125 patent should be found invalid as obvious.  Long felt but unsolved need at the time of the invention is one of the secondary considerations that are considered as "indicia of obviousness or nonobviousness" of the patented invention.  *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).  The rationale is

---

[4] The Special Master notes that there is a "brief allusion" to a third embodiment in the specification, but he chose to ignore the allusion because it had not been briefed and to omit further discussion.  (Khan Declaration Ex. A, at ¶ 17).  His report is therefore based solely on Figures 2 and 3 as the only disclosed embodiments.

14

that if there was a long felt need for an invention, it tends to show that the invention was nonobvious because otherwise others likely would have come up with the same solution.

In attempting to show a long felt need for simultaneous voice chat and remote game play, Dr. Matheson states that "significant attention in the online gaming market has been directed to the fact that the very popular Nintendo Wii lacks voice chat," citing to articles that show a demand for a voice chat feature in the Wii. (Khan Declaration Ex. K, at 25-27.) The Wii was released in September of 2006, and the articles cited by Dr. Matheson are dated September 2007 and April 2008.

Dr. Matheson misapprehends that under the doctrine of obviousness, there must be a showing of long-felt need *at the time* of the invention. *See Orthopedic Equipment Co., Inc. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1382 (Fed. Cir. 1983) (finding no evidence of "long felt but unsolved need" because there was no evidence of "*previous* unsuccessful attempts."); *Texas Instruments Inc. v. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993) (Stating "long-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem.")  Plaintiffs allege that Hochstein and Tenenbaum had their first rough prototype of their invention in or about early 1991. The filing date of the '125 patent is May 31, 1991. The presence or absence of voice-chat in Nintendo's Wii video game console released some fifteen years after the patent was filed is absolutely irrelevant to the question of long felt and unsolved need at the time of the purported invention.

Obviousness is to be determined from the point of view of person of ordinary skill in the art "at the time the invention was made," and the Wii is not relevant to that inquiry. 35 U.S.C. § 103. Accordingly, the Court should preclude any evidence of or testimony on the Wii.

15

## **CONCLUSION**

For the foregoing reasons, Plaintiffs should be precluded from mentioning, or presenting any testimony or other evidence concerning, the issues discussed above.

                Respectfully submitted,

                DYKEMA GOSSETT PLLC

                s/William F. Kolakowski III
                William F. Kolakowski (P55906)
                Attorney for Defendant Microsoft Corporation
                39577 Woodward Ave., Ste. 300
                Bloomfield Hills, MI 48304
                (248) 203-0822
                wkolakowski@dykema.com

Dated:  July 21, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Robert J. Franzinger
    rfranzinger@dykema.com, pward@dykema.com

    John S. LeRoy
    jleroy@brookskushman.com, lsavage@brookskushman.com

    Thomas A. Lewry
    tlewry@brookskushman.com, lsavage@brookskushman.com

    Marc Lorelli
    mlorelli@brookskushman.com, lsavage@brookskushman.com

    Marc A. Cantor
    mcantor@brookskushman.com, lsavage@brookskushman.com

    Douglas C. Salzenstein
    dsalzenstein@honigman.com, mjohnson@honigman.com

    Richard E. Zuckerman
    rzuckerman@honigman.com, dmansueto@honigman.com

    s/William F. Kolakowski III
    William F. Kolakowski (P55906)
    DYKEMA GOSSETT PLLC
    Attorneys for Defendant Microsoft Corporation
    39577 Woodward Ave., Ste. 300
    Bloomfield Hills, MI 48304
    (248) 203-0822
    wkolakowski@dykema.com

Dated:  July 21, 2008