UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER A. HOCHSTEIN, et al.,

      Plaintiffs,                           CASE NO. 04-CV-73071

-vs-                                         PAUL D. BORMAN
                                             UNITED STATES DISTRICT JUDGE

MICROSOFT CORPORATION, et al.,

      Defendants.
_____/

**OPINION AND ORDER
(1) ACCEPTING IN PART AND REJECTING IN PART THE SPECIAL MASTER'S
SUPPLEMENTAL REPORT & RECOMMENDATION;
(2) GRANTING MICROSOFT'S MOTION FOR LEAVE TO FILE A PARTIAL
SUMMARY JUDGMENT MOTION; AND
(3) GRANTING MICROSOFT'S MOTION FOR SUMMARY JUDGMENT ON
CLAIM 15 OF THE '125 PATENT**

     Before the Court are the parties' July 28, 2008 Objections to the Special Master's July 24, 2008 Supplemental Report and Recommendation ("supp. R&R"). Both parties filed Reponses. On August 13, 2008, Microsoft also filed a supplemental brief on the issue of the construction of claim 15's "control means." The Court held a hearing on August 21, 2008. Having considered the entire record, and for the reasons that follow, the Court ACCEPTS IN PART and REJECTS IN PART the Special Master's Supplemental R&R, GRANTS Microsoft's motion for leave to file a partial summary judgment, and GRANTS Microsoft's motion for summary judgment on claim 15 of the '125 patent. This leaves Plaintiffs' claim 39 to proceed to trial.

## I. BACKGROUND

The background of the instant case is recounted in this Court's previous Order on the parties' motions in limine. *See Hochstein v. Microsoft Corp.*, No. 04-73071, 2008 U.S. Dist. LEXIS 64677, *1-6 (E.D. Mich. Aug. 21, 2008) (Doc. No. 320).

On April 22, 2008, Microsoft filed a motion for leave to file a partial summary judgment motion on the claim 15 infringement issue, in light of the Federal Circuit's March 28, 2008 decision in *Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 521 F.3d 1328 (Fed. Cir. 2008). Microsoft's sole argument in that motion was that *Aristocrat* specifically rebuts the Special Master's conclusions that the '125 patent disclosed an algorithm for the microprocessor embodiment in Figure 3. Plaintiffs responded that *Aristocrat* did not advance the ball significantly from *Biomedino* or *AllVoice* – that essentially *Aristocrat* was a case in which no algorithm was disclosed, whereas the Special Master found that the '125 patent disclosed an algorithm.

With the consent of the parties, the Court referred only Microsoft's motion of April 22, 2008, to the Special Master to hold a hearing on July 18, 2008, as to Figure 3. On July 24, 2008, the Special Master issued his Supplemental R&R. In that Supplemental R&R, the Special Master went beyond this Court's referral that was limited to Figure 3 and *Aristocrat*, and *sua sponte* reversed his prior conclusion as to Figure 2 of the '125 patent that had been adopted by this Court. The Special Master's reversal as to Figure 2 was a necessary component of his conclusion in the Supplemental R&R that claim 15 should proceed to trial. On July 28, 2008, both parties filed objections to the Supplemental R&R. The Court does not adopt the Special Master's reversal of his prior determination as to Figure 2.

Plaintiffs' sole objection to the supplemental R&R involved a typographical error in paragraph 11. Both parties agreed that the relevant word appeared to be in error. The Special Master concurred with the parties. The Court corrected the word in the Special Master's supplemental R&R accordingly. (Doc. No. 312).

Microsoft filed three objections to the supplemental R&R. First, Microsoft contends that the Court must grant summary judgment on claim 15, since the Special Master found that '125 patent's disclosed microprocessor in Figure 3 does not identify an algorithm as required by *Aristocrat*. In response to the Special Master's reconsideration of a Figure 2-based equivalency argument, Microsoft maintains that Plaintiffs have waived any infringement theory for claim 15 based on Figure 2 in the '125 patent. Finally, Microsoft contends that it does not infringe claim 15 since its structure requires that voice and communication be separated before being transmitted to the modem.

## II.  ANALYSIS

### A.  Standard of Review

Pursuant to Fed. R. Civ. P. 53(f), this Court must perform a *de novo* review of a special master's factual findings and legal conclusions.

### B.  Microsoft's Objections

Microsoft contends that the microprocessor depicted in Figure 3 of the '125 patent fails to disclose an algorithm, thus failing to satisfy the *Aristocrat* standard.

For better comprehension of the relevant issues, the Court reproduces below the two relevant Drawings from the '125 patent.

**FIGURE 2**
**Block Diagram of the Preferred Embodiment of the Subject Invention**



**FIGURE 3**
**Schematic Diagram of the Circuitry of the Preferred Embodiment of the Subject Invention**



Claim 15 of the '125 patent states:

> A video game communication assembly (100) for communicating command signals between a local video game (12) having at least two player ports (A, B), one set of player controls (20), and a microprocessor (12), and at least one remote video game (30) in a medium capable of transmitting plurality of data signals and voice signals, said assembly (100) comprising:
>
> > control means (106) for receiving command signals from a set of player controls (20) from a local video game and for creating communication signals from the command signals;
> >
> > modem means (114) for bilaterally transmitting said communication signals between said control means (106) and at least one remote video game (30);
> >
> > first port means (112) for bilaterally transmitting said communication signals between said control means (106) and said modem means (114), said assembly (100) characterized by
> >
> > voice over data means (134) for simultaneously receiving voice signals and said communication signals and for transmitting said communication signals to said modem means (114).

'125 Patent col. 10 ll. 60-68, col. 11 ll. 1-13.

In his original January 26, 2007 Report and Recommendation, adopted by this Court on October 25, 2007, the Special Master described claim 15 as a "means-plus-function" recitation, governed by 35 U.S.C. § 112, ¶ 6. (R&R ¶ 18). Section 112, ¶ 6 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Section 112, ¶ 6 "restricts claim limitations drafted in such functional language to those structures, materials, or acts disclosed in the specification (and their equivalents) that perform the claimed function." *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703 (Fed. Cir. 1998). "Once a court establishes that a means-plus-function limitation is at issue, it must construe that limitation, thereby determining what the claimed function is and what

structures disclosed in the written description correspond to the 'means' for performing that function." *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).

Relevant to the instant motion, Microsoft's original 2005 summary judgment briefing made the following contentions regarding claim 15: (1) Microsoft did not infringe on the '125 patent's Figure 2 arrangement because the Xbox lacks a "voice over data circuit" – i.e., the Xbox product did not employ the disclosed analog arrangement of using hardware filters to block communication signals from voice signals and subsequently sending the communication signals to the modem and the voice signals to the speaker/microphone; (2) the '125 patent failed to disclose an algorithm for the Figure 3 microprocessor; (3) if anything, the algorithm for the Figure 3's microprocessor is the operation of Figure 2's discrete notch filters; and (4) Plaintiffs could not show infringement under the doctrine of equivalents.

Plaintiffs responded in 2005 that: (1) the '125 patent discloses two *alternative* embodiments – Figure 2's "discrete electrical components" and Figure 3's microprocessor; (2) their expert Dr. Jamin provided the following algorithm for the microprocessor: "[1] combining and transmitting the player voice and game data signals outbound direction, and [2] receiving and separating the signals inbound direction"; (3) one skilled in the art in 1990 could have programmed the microprocessor to perform this algorithm; and (4) Dr. Jamin established liability for "equivalents."

After considering the parties' positions and subsequent oral argument on claim 15, the Special Master's initial R&R made the following relevant conclusions:

> 17. The written description sets forth at least three ways to implement [ ] claim [15]. In the embodiment of Fig. 2, voice and communication (game command) data are transmitted over the same line using different carrier frequencies, much like two radio stations would transmit over the airwaves. A system of filters enables the receiving end to separate the one type of signals (voice) from the other type (communication signals

6

representing game commands), so they can be appropriately routed within the receiver apparatus. The Fig. 3 embodiment employs a microprocessor to handle these mixing and separating functions. . . .

. . . .

31. For the filters example given in the specification using frequency division multiplexing, the sets of filters 136 and 132 (Fig. 2) are important. These filters take out the undesired frequencies. Those called "first" filters 136 remove the data tones from outgoing voice so they will not scramble the data signals when they arrive at the other end, and they also block the data tones in the incoming signals so that the players will not have the annoyance of hearing them. Those denominated as "second" filters 132 remove all but the data tones from the incoming composite signal, so that the modem will "see" only the pure tones representing communication signals. Implemented in this way, the voice over data function is being carried out by frequency division multiplexing, where signals of different frequencies are mixed together at one end of the channel, and sorted out at the other. Moreover, as described in the patent, each player's unit is acting as both a sending and a receiving unit at the same time – i.e., the system is "full duplex."

. . . .

32. The filters [in Fig. 2] are thus key parts of the corresponding structure in this implementation.

33. The patent's description also contains a microprocessor implementation (Fig. 3) wherein no filters are explicitly shown. A microprocessor 170 is disclosed for handling the voice-over-data functions. The specification does not detail how the differing types of signals are to be handled, but it is clear that the microprocessor's function is to allow voice over data in a way that allows both to be used by the game players.

34. Microsoft contends a disclosure of a microprocessor without its specific programming is not a disclosure of any structure at all for 112(6) purposes.

. . . .

36. In the context of software patents using "means for" expressions in the claims, the "structure" by which the claim term is limited is the microprocessor programmed to carry out an algorithm disclosed in the specification of the patent.

. . . .

38. It is therefore clear that the current state of the law recognizes that the corresponding structure for the microprocessor-implemented function is the microprocessor programmed to carry out an algorithm disclosed in the patent's specification.

39. Bearing in mind that we must not read from the specification more features that are needed to carry out the desired function, *the algorithm*

*involved here is: combining in some manner signals representing voice and signals representing game commands, transmitting both over a single communication channel, and separating them out in some manner at the other end.* No specific kind of multiplexing is necessary; the signals can be combined in various known ways without blurring their information content. No specific type of hardware for separating them is needed either. Any hardware or software arrangement that preserves the identity and content of both voice and commands is included.

40. There is evidence in the record that such programming was within the skill of the art without detailed teaching in the patent in suit.

. . . .

43. Defendants use time division multiplexing, so frequency-sensitive filters are unnecessary for separating voice from communication information. Defendants use packet information to tell the receiver that the particular packet at hand, or specific bits within the packet, are voice or command data. Each type of information is routed within the receiver for correct processing of that kind of information. It is clear that this is not the voice/data separation arrangement discussed in connection with Fig. 2 of the patent. Not so clear is whether defendants' arrangements are equivalent to the microprocessor implementation of Fig. 3.

. . . .

44. At oral argument on these motions, [defendants] urged that the microprocessor implementation shown in Fig. 3 should be read as simply another version of the Fig. 2 arrangement with all its functional details. By that view, the disclosed microprocessor implementation would incorporate the frequency division multiplexing and filtering schemes disclosed in connection with the Fig. 2 embodiment, and neither defendant's products has those particular features.

45. *[Plaintiffs] contend that Fig. 3 implementation stands on its own and its voice-over-data structure does not include the filters of frequency division multiplexing shown in Fig. 2. I believe that this position is correct.*

. . . .

46. Thus, in both defendants' products, the broad algorithm disclosed in the patent is being carried out, combining voice and command signals at the sending end, transmitting them over a single communication channel, and separating them at the receiving end.

. . . .

49. *A reasonable jury could conclude that in the context of this patent, [defendants'] arrangements for recovering the diverse types of signals on the line operate in substantially the same way as the microprocessor arrangement of Fig. 3 of the patent and hence are within the voice over data feature of claim 15*. Accordingly, it would be inappropriate to grant defendants' noninfringement motions on this ground.

(R&R ¶¶ 17, 31-34, 36, 38-40, 43-46, 49) (internal citations omitted) (emphases added).

On February 21, 2007, Microsoft filed objections on essentially all unfavorable recommendations. Plaintiffs did not file any objections.

On May 18, 2007, this Court held a hearing on Microsoft's objections.

On October 25, 2007, the Court rejected Defendants' objections, and accepted the Special Master's Report in its entirety. Of particular importance, this included the Special Master's conclusion that Figure 3 is totally independent from Figure 2.

On April 22, 2008, Microsoft filed the instant motion for leave to file a partial summary judgment motion.

With the consent of the parties, the Court referred Microsoft's motion to the Special Master to hold a hearing on July 18, 2008, on the discrete issue whether *Aristocrat* eviscerates Plaintiffs' assertion that Figure 3 discloses an algorithm.

On July 24, 2008, the Special Master issued a Supplemental R&R. For the purposes of Microsoft's arguments on claim 15, the Special Master made the following observations:

> 6. In my prior report I discussed this "voice over data means" recitation in claim 15 as involving a broad algorithm (set of logical steps) for programming a microprocessor: combining of voice and data signals, transmitting them over a single communication channel, and separating them out at the other end. Microsoft is right in pointing out that the language now under discussion strictly implicates only the separating out portion of it, i.e., the receiving language. More importantly, Microsoft is right in arguing that the previous identification of the programming algorithm was, under *Aristocrat*, too broadly stated.
> . . . .
> 13. I adopted the two-embodiment view in my initial report, but now I think it is not correct. The specification describes the patent drawings as follows: "FIG. 2 is a block diagram *of the preferred embodiment* of the subject invention; and FIG. 2 is a schematic diagram of the circuitry *of the preferred embodiment* of the subject invention."
> . . . .
> 18. Neither side has presented any meaningful expert evidence on the question of whether the patent specification sets forth such a receiving algorithm.

As mentioned in my 2007 report, Plaintiffs' expert, Dr. Jamin, stated in his August 2005 declaration that a person skilled in the art as of 1990 "was certainly capable of programming a microprocessor to perform the combining and separating of signals as described in the '125 patent. Such conclusions about enablement were held in *Aristocrat* to be insufficient disclosure of an algorithm for a microprocessor. On the other side, Microsoft has presented no expert evidence on this subject in support of its motion.

19. From a non-skilled-in-the-art point of view, I would have to concur with Microsoft that the '125 patent specification does not explicitly lay out an algorithm that lists steps for programming a microprocessor to carry out the receiving portion of the voice over data function of claim 15. However, the non-skilled view is not the pertinent one. We need to bear in mind that disclosure of an algorithm depends on the understanding of skilled persons, which we do not have in the record here.

20. From *Finisar* we know that no particular form for the algorithmic teaching is required. *Finisar* says the algorithm disclosure can be in prose, or in any other terms understandable to a person skilled in the art. Since Figs. 2 and 3 portray the same preferred embodiment in different forms, the blocks of Fig. 2 and the accompanying test from the specification need to be considered in determining whether they amount, in the eyes of skilled persons, to disclosure of an algorithm for how the microprocessor shown in Fig. 3 portrayal should be programmed to carry out the receiving-and-sending-to-modem function recited for the voice over data means in the claim. Absent expert evidence, it seems to me impossible to pronounce a summary judgment that there is no appropriate algorithm disclosed in the specification.

. . . .

25. In the present motion papers, Microsoft tells us nothing about how its accused Xbox product works, other than it "does not contain corresponding structure of Figure 2 of the '125 patent." I find two problems with this position. First, it is based on an unduly narrow reading of the disclosure of Fig. 2, constraining it to the use of discrete analog devices. Second, 112(6) does not limit the literal scope of a mean expression to the structures shown in the specification, but also includes equivalents of those structures. We have nothing in the motion papers by which to determine that the Xbox does not correspond to Fig. 2 as properly read, or that Xbox is not equivalent to Fig. 2 as properly read.

. . . .

26. However, as stated earlier, in my view claim 15 is not restricted to hardware filters. It could also cover microprocessor-plus-algorithm implementation of a digital filter for separating voice packets, command packets, and hybrid packets, as used by the Xbox; and it would also cover equivalents of either arrangement. I also reviewed Dr. Macedonia's

> declaration submitted in support of Microsoft's 2005 motion. There is not enough information given to determine whether a person skilled in the art would find a programming algorithm in the '125 patent specification and drawings, or by which to say categorically that the Xbox arrangement operates in a nonequivalent way.
>
> . . . .
>
> 27. [I]n the absence of testimony by skilled persons regarding the algorithm of Fig. 2, and further expert testimony comparing such algorithm with the operation of the Xbox, I cannot say that Microsoft has discharged its burden in seeking summary determination of noninfringement. Rather, I believe both issues should be sorted out in light of further expert evidence – the algorithm issues by the court as part of the claim interpretation, and the equivalency issues by the jury at trial.

(supp. R&R ¶¶ 18-20, 26-27) (internal citations and footnotes omitted).

The Special Master observed that additional expert testimony could possibly interpret the "voice over data means (134) for simultaneously receiving voice signals and said communication signals and for transmitting said communication signals to said modem means (114)" in two non-exclusive ways. First, a person skilled in the art could find that the "voice over data means" refers to the Figure 2 discrete analog frequency division multiplexing scheme, or any equivalent of such arrangement. (*Id*. at ¶ 22(i)). This tells the Court that the Special Master concluded that Plaintiffs did not present testimony in the record to support their claim relying on Figure 2. Second, the Special Master states that a person skilled in the art could find that Figure 3's microprocessor was programmed in the manner described by Figure 2, or any equivalent of such arrangement. (*Id*. at ¶ 22(ii)). Thus, the Special Master inescapably recognized that the summary judgment record lacked sufficient evidence to support either or both theories.

The Special Master in his Supplemental R&R went beyond the limited scope of the Court's referral – limited to Microsoft's motion's discrete contention that the *Aristocrat* decision warranted summary judgment on the theory that the Special Master had originally recommended, and the Court accepted – that Microsoft infringed upon the Figure 3 microprocessor embodiment

as programmed by the algorithm proposed by the Special Master. In effect, here, the Special Master reconsidered the issue of whether, in the event of finding that Plaintiffs' trial theory no longer passed muster under *Aristocrat*, Plaintiffs could possibly proceed to trial on other theories of infringement of claim 15.[1]

---

[1] The genesis of the Special Master's out of the box conclusions in his Supplemental R&R appears to have occurred at the July 18, 2008 hearing:

> Master: If it's all coming down to separating by filtering, why don't you just rely on the figure two embodiment and say that it's equivalent and go to trial?
>
> Plaintiffs' Counsel: Short answer is we do. The problem with that is it's not right. That's the problem. You know, throughout this case Microsoft has said let's just erase – let's erase what this patent says, the preferred embodiment, figure three. That's wrong. It's true. If you say we could – we're just going to erase that implementation, you know, we have an expert report that fully argues equivalence and we try this case, but it's wrong.
>
> Master: Wrong in the sense it shouldn't be done, not wrong in the sense that the contention is wrong, right?
>
> Plaintiffs' Counsel: Right. Well, let me say wrong. Figure two, I believe, is a flow chart, so that doesn't really limit us one way or the other. But if claim 15, the voice over data means limitation was limited to analog frequency notch filters for frequency division multiplexing, that would be wrong. That's not what the inventors contemplated. That's not what they said.
>
> Master: Well, let me put it this way. I think I understand where you are, but if figure three were deleted tomorrow by reissue from the patent, you'd still be going to trial for infringement, wouldn't you?
>
> Plaintiffs' Counsel: Absolutely.
>
> Master: Okay.
>
> . . . .
>
> Microsoft's Counsel: On a final note, there was some discussion about couldn't they just proceed to trial on allegation of equivalence between the notch filter embodiment described in figure 2 and the microprocessor implementation of – in Microsoft's products. You know, that may have been a theory. That is not the theory advanced by Professor Jamin in his infringement analysis. That was not the basis on which they opposed the summary judgment motion. While that may have been a path they could have gone down at some point in this case, it is not a path that they went down with respect to Microsoft and Microsoft's claim. If you go

On July 28, 2008, Microsoft made the following objections to the Supplemental R&R: (1) the disclosed microprocessor does not meet the *Aristocrat* standard since the Special Master could not find an algorithm in the patent; (2) Plaintiffs have waived any infringement claim based upon Fig. 2; and (3) the structure corresponding to claim 15 requires that voice and communication signals be separated in advance of the communication signals being transmitted to a modem. On August 13, 2008, Microsoft filed a supplemental brief concerning the construction of claim 15's "control means" if the Court did not grant partial summary judgment on claim 15.

As explained above, Plaintiffs only objected to the typographical error in paragraph 11 of the Supplemental R&R. Plaintiffs did not object to the Special Master's conclusion that Figure 3's microprocessor embodiment lacked a disclosed algorithm.

Microsoft argues that summary judgment is warranted on claim 15 for the following reasons: (1) the Special Master could not locate an algorithm for Figure 3's microprocessor, and (2) the Special Master's recommendation that additional expert testimony could uncover the algorithm is contrary to the holding in *Aristocrat*. In *Aristocrat*, the Federal Circuit explained:

> In cases involving a computer-implemented invention in which the inventor has invoked mean-plus-function claiming, [ ] court[s] have required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor. . . . For a patentee to claim a means for performing a particular function and then to disclose only a general purpose computer as the structure designed to perform that function amounts to pure functional claiming. Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to "the corresponding structure, material, or acts" that perform the function, as required by section 112, paragraph 6.

---

back and look and the summary judgment briefing for 2005 and Professor Jamin's 2005 report, it's not there.

(Tr. 7/18/08, at 28-29, 39-40).

521 F.3d at 1333.

In *Finisar Corporation v. DirecTV Group, Inc.*, 523 F.3d 1323 (Fed. Cir. 2008), the Federal Circuit clarified that a patentee can "express [an] algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Id*. at 1340 (internal citation omitted). Even given the lack of a "lofty standard for indefiniteness," a patentee still must *disclose* an algorithm for a microprocessor-based means-plus function claim. *Id*. at 1341.

Under the *Aristocrat* analysis, a court must determine first if the patent discloses an algorithm. *Id*. at 1337. If there is no algorithm, then the patent's means-plus-function claim fails for indefiniteness. *Finisar*, 523 F.3d at 1341. However, if the algorithm exists in the patent, only then is evidence from those skilled in the art relevant to the *sufficiency* of such a disclosure. *Aristocrat*, 521 F.3d at 1337. In other words, for the purposes of § 112, ¶ 6, it is necessary to "look at the disclosure of the patent and determine if one skilled in the art would have understood *that disclosure* to encompass software [to perform the function] and been able to implement such a program, not simply whether one of skill in the art *would have been able to* write such a such a software program." *Id*. (citation omitted) (emphases added).

As noted above, the Court's summary judgment order adopting the Special Master's initial R&R permitted Plaintiffs to proceed to trial on claim 15 on a theory that Microsoft infringed upon the Figure 3 microprocessor with the Special Master's stated algorithm. However, in the Supplemental R&R, the Special Master indicated that in the review of the patent and the case record, he could not locate an algorithm. The Court agrees with that conclusion of the Special Master, and adopts that conclusion – that Figure 3 does not disclose an algorithm. The

Court rejects the Special Master's suggestion that the Court permit additional expert testimony to determine whether the patent *discloses* an algorithm.[2]

This Court accepts the Special Master's conclusion that there is no independent algorithm disclosed for Figure 3's microprocessor implementation. Following *Aristocrat*, this Court reconsiders its previous summary judgment order and concludes that claim 15 is indefinite.[3]

The Court agrees with Microsoft's repeated observation that, throughout this case, Plaintiffs have failed to pursue consistently this "alternative" theory – that Microsoft's time division multiplexing ("TDM") system is an "equivalent" of Figure 2 frequency division multiplexing ("FDM") scheme. Initially, Dr. Xydis' relevant declaration regarding "equivalence" was submitted in response to *Sony's* motion for summary judgment, and was offered on the proper construction of claim 15's term "simultaneously" – not in relation to any specific argument concerning § 112, ¶ 6 equivalency. Furthermore, the Special Master's original R&R implicitly rejected any independent Figure 2 infringement claim. (R&R ¶¶ 43 & 45). Plaintiffs did not object to this decision in the Special Master's R&R, which the Court adopted. In his Supplemental R&R, the Special Master indicated that he could not find support in the record to

---

[2] *Aristocrat* involved a patentee's invention of an electronic slot machine that allowed a game player to select winning combinations of symbol positions. 521 F.3d at 1329. The Federal Circuit held that the patent's disclosure of "any standard microprocessor base [sic] gaming machine [with] appropriate programming," was insufficient. *Id*. at 1333-38.

The patent in *Finisar* involved a system that permitted subscribers to have access to video and audio through high-speed satellite or cable links. 523 F.3d at 1326. the Federal Circuit similarly held that the certain claim limitations including "database editing means . . . . for generating . . . . and for embedding . . . ." lacked sufficient disclosure in the patent specification to survive an indefiniteness challenge. *Id*. at 1340-41.

[3] Plaintiffs' last-ditch attempts to disclose an algorithm in the current record are unavailing. In support, Plaintiffs cite to paragraphs 5 through 7 of Dr. Jamin's 2005 declaration. However, Dr. Jamin's relevant statements do not demonstrate that the '125 patent itself discloses an algorithm for the microprocessor. The Special Master essentially adopted Dr. Jamin's position in his original R&R – and subsequently abandoned this formulation in his supplemental R&R.

show that Plaintiffs demonstrated that the Xbox was equivalent to Figure 2. (supp. R&R ¶ 25). Plaintiffs failed to object to either of the Special Master's conclusions on Figure 2. Instead, Plaintiffs belatedly launched this argument at the July 18, 2008 hearing on the Supplemental R&R to attempt to revise their litigation positions and effectively request reconsideration of the original summary judgment analysis of claim 15. The Court rejects this untimely argument.

The Court notes that Microsoft even suggested during the 2005 summary judgment briefing that, at best, Figure 2 provided the structure for Figure 3. Not only did Plaintiffs *fail to object* to the Special Master's original observation that Figure 2 by itself was not in play for literal or equivalent infringement, but Plaintiffs rejected Microsoft's proffered view that Figure 2 could provide the structure for Figure 3. When the Special Master's Supplemental R&R abruptly revised his view as to Figure 2, Plaintiffs responded by changing their litigation position on claim 15 to embrace Figure 2. Given the extended history of this case, the detailed pleadings, and multiple proceedings in the instant case, and the ample opportunity to pursue this theory during the many years of summary judgment briefing gone by, Plaintiffs' late conversion, which is not responsive to the instant issue before the Court, to wit, Figure 3, is not in play and will not be considered by the Court.

The sole issue before the Special Master involved whether *Aristocrat* and *Finisar* had any impact on the legal analysis of Figure 3's alleged algorithm disclosure. Neither Microsoft, nor the Court, requested a wholesale reconsideration of the Court's previous findings and rulings regarding claim 15.

In short, the Court accepts the Special Master's conclusion that Figure 3's microprocessor does not disclose an algorithm. The Court rejects the Special Master's *sua sponte* reconsideration of various Figure 2-based equivalency arguments, either standing alone or as a

16

"flow chart" for Figure 3. Therefore, the Court GRANTS summary judgment to Microsoft on claim 15.

## III. CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **ACCEPTS IN PART** and **REJECTS IN PART** the Special Master's Supplemental R&R;

(2) **GRANTS** Microsoft's motion for leave to file a partial summary judgment motion; and

(3) **GRANTS** Microsoft's motion for summary judgment on claim 15.

Claim 39 will proceed to trial.

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 2, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 2, 2008.

s/Denise Goodine
Case Manager