UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER A. HOCHSTEIN, JEFFREY
TENENBAUM, and HAROLD W. MILTON,
JR.,                                                                Case Number: 04-73071

                 Plaintiffs,                       JUDGE PAUL D. BORMAN
                                            UNITED STATES DISTRICT COURT

v.

MICROSOFT CORPORATION,

                 Defendant.
_____ /

**ORDER**
**(1) GRANTING MICROSOFT'S MOTION TO REOPEN DEPOSITIONS OF PLAINTIFF INVENTORS AND COMPEL DEPOSITION ANSWERS (A) RE: OKI DATA BOOK AND (B) DOCUMENTS PROVIDED BETWEEN MARCH 23, 2005 (CONCLUSION OF SECOND SET OF INVENTOR DEPOSITIONS) AND OCTOBER 31, 2008 (CLOSE OF DOCUMENT DISCOVERY) – NO "REPLOWING" OF OLD GROUND, EXCEPT TO THE EXTENT THE NEW DOCUMENTS REQUIRE REVISITING AN ISSUE;**
**(2) REJECTING PLAINTIFFS' INTERPOSITION OF "NON-EXPERT" OBJECTIONS TO QUESTIONS TO INVENTORS-- EITHER ANSWER, RESPOND THAT THEY CANNOT ANSWER DUE TO LACK OF "KNOWLEDGE OR SKILL," OR PRESENT THE COURT WITH A MOTION PURSUANT TO FED. R. CIV. P. 30(d)(3)**

Before the Court is Microsoft Corporation's Motion to Compel Answers to Deposition Questions, filed April 15, 2009. (Doc. No. 348). The motion has been fully briefed, and this Court heard oral argument on May 8, 2008. For the reasons that follow, the Court **GRANTS** Microsoft's motion to compel, subject to the "no replowing of old ground except to the extent the new documents require revisiting an issue," limitation.

**I. BACKGROUND**

On December 12, 2007, Eric Buresh, counsel for then co-defendant Sony, emailed Plaintiffs' counsel to request additional depositions of Plaintiffs, with a "cc" to Richard Cederoth, counsel for Defendant Microsoft. (Pls.' Resp. Ex. 1, Email from Eric Buresh to John LeRoy, 12/12/07).

> On our last call, I mentioned the <u>defendants'</u> desire to depose Messgrs. [sic] Hochstein, Tenenbaum, and Milton with respect to documents produced after their respective depositions. The following is a list of those documents on which we would like to depose the patentees (obviously, not all the documents pertain to each of the witnesses):
>
> After Hochstein's 3/23/05 deposition: TEHC 3626-current (now, 6813)[.] After Tenenbaum and Milton's 3/9/05 deposition[s]: TEHC 3415-current (now 6813)[.]
>
> At least from my perspective, I don't think that the timing is pressing on these depositions, but I do want the opportunity to determine your witnesses' view of these documents. Please advise if you will object to a <u>deposition</u> of these individuals <u>with respect to the above-identified documents</u>.

(*Id.*) (emphasis added).

On December 20, 2007, Plaintiffs' counsel responded:

> I'll ask our clients about their availability. I expect a reasonable limit on the length/scope of the depositions. I don't think defendants should have more than 2 hours with each witness, and re-plowing old ground is definitely out of the question. Do we have agreement on this?

(Pls.' Resp. Ex. 2, Email from John LeRoy to Jonathan N. Zerger, 12/20/07)(cc to Cederoth, counsel for Defendant Microsoft).

Defendants' counsel replied:

> As for the time allotted to the Hochstein, Tenenbaum, and Milton depositions, we hope to complete all three within one day. <u>It is not our intent to "re-plow" old ground (except to the extent any of the documents you produced after their respective depositions requires us to revisit an issue)</u>. As for your limitation to 2 hours per deposition, we are reluctant to agree to a strict timeline given that we cannot predict or control the pace of the deposition answers.

(Pls.' Resp. Ex. 3, Email from Jonathan Zerger to John LeRoy, undated)(cc to Cederoth, counsel for Defendant Microsoft).

Thus, Microsoft's counsel, Richard Cederoth, who had conducted the previous depositions of Plaintiffs, was cc'd on all the above quoted emails and did not object to the ground rules for resuming the Plaintiffs' depositions.

On April 7, 2009, Microsoft deposed Hochstein and on April 8, 2009, Microsoft deposed Tenenbaum. (Def.'s Mot. 5). The April 2009 depositions were the third time Microsoft had deposed Plaintiffs Hochstein and Tenenbaum. (*Id.*) A different Microsoft attorney, David Pritikin, conducted these depositions.

Shortly after the deposition began, Pritikin asked Plaintiffs' counsel whether they had a prototype of Plaintiffs' invention available for use during the deposition. (Pls.' Resp. Ex. 4, Hochstein Dep. 15). John LeRoy, one of Plaintiffs' attorneys, confirmed that a prototype was available but noted that Hochstein had been questioned about the prototype extensively in previous depositions and stated that the parties agreed not to re-plow old ground. (Hochstein Dep. 16). In accordance with the agreement, Mr. LeRoy stated, "Microsoft is free to ask Mr. Hochstein any questions [sic] which is pertaining to subject matter produced after his last deposition." (Hochstein Dep. 16).

Mr. Pritikin then said:

> Well, I respectfully disagree with your characterization that there is an agreement that old ground won't be re-plowed. I don't know exactly what that means. You've produced documents showing that there were problems with the prototype, documents that we have never had the opportunity to questions the inventors on . . .
>
> ***
> There were problems with the prototype. It's called out in the

3

> correspondence. I asked to have the prototype brought into the room. You represented off the record that the prototype is in these offices. You have refused to bring it out for purposes of questioning. We, therefore, reserve all rights, including an order requiring the witnesses to come back for a further deposition, to cover our costs in doing that and a preclusion order in the event the Court feels that it is warranted. I'm not going to argue with you about it. You've said you won't produce it, so we'll proceed without it but we reserve the rights.

(Hochstein Dep. 17). Pritikin's response – disagreeing that there was an agreement that old ground would not be re-plowed– indicates that apparently he had not been provided with a copy of the ground rules his co-counsel Cederoth had been involved in drafting for the third set of depositions.

In response to Pritikin's statement, Plaintiffs' counsel, John Lewry, stated:

> One other thing we need to add to this record is that off the record we asked whether you'd represent that you would limit your questioning to things that were reasonably within the scope of what we believe is the agreement of these depositions, that is new subject matter, and you told us you won't represent anything with respect to that, and that's the reason, part of the reason anyway that is being refused at this stage. That needs to be put on the record, too.

(Hochstein Dep. 17-18).

Mr. Pritikin responded:

> And we are not going to limit our questioning in advance. I don't know where the answers are going to go. So I'll do the best I can with the photographs I have, but it is not a substitute for having it [the prototype] here, and I think given that you have it in the building here, it is unreasonable not to bring it for purposes of this questioning, but that will be for the Court to resolve at some point.

(Hochstein Dep. 18).

Subsequently, Plaintiffs' counsel LeRoy repeatedly instructed his clients not to answer certain deposition questions because Microsoft's counsel's questions were outside the agreed-upon scope of the deposition. Plaintiffs' counsel lodged a "continuing objection to any questioning on documents that were produced to Microsoft in advance of Mr. Hochstein's prior deposition." (Hochstein Dep. 78).

4

When Microsoft's counsel persisted in asking what Plaintiffs' counsel considered questions outside of the scope of the deposition, Plaintiffs' counsel instructed Hochstein not to answer. (Hochstein Dep. 125). Plaintiffs' counsel stated, "[t]hese are questions - again, this is not tied any documents that Mr. Hochstein has produced in this case since his last deposition are these documents [sic] - these are questions that you could have asked him before, and I'm just going to instruct the witness not to answer on that basis." (Hochstein Dep. 85, 123, 125, 129, 139, 164).

Plaintiffs' counsel also instructed Hochstein not to answer hypothetical questions, which would require him to give expert opinion. (Hochstein Dep. 112, 119). Eventually, Plaintiffs' counsel "put an end" to Microsoft's line of questioning pertaining to the patent. (Hochstein Dep. 119).

At Tenenbaum's deposition, Plaintiffs' counsel LeRoy again emphasized that the questions were supposed to be limited to documents produced after Tenenbaum's 2005 deposition, and instructed Tenenbaum not to answer questions concerning materials produced prior to the previous deposition. (Def.'s Mot. Ex. 2, Tenenbaum Dep. 12, 20, 31, 37, 51, 61, 63, 73, 75, 97, 106-07).

Plaintiff's counsel also instructed Tenenbaum not to answer questions requiring him to compare and interpret documents, which would require Tenenbaum to give an expert opinion. (Tenenbaum Dep. 82, 86, 108-09).

Also at issue are questions regarding the OKI Data Book, which Plaintiffs' expert Dr. Thomas Matheson relied on in his 2006 expert report. (Def.'s Mot. 8). Plaintiffs' counsel did not allow either Tenenbaum to answer what Microsoft calls "substantive questions" about the book at their recent depositions. (*Id.*) Plaintiffs' counsel considered the questions to be calling for expert opinion or to relate to the subjects of Tenenbaum's prior deposition. (*See e.g.* Tenenbaum Dep. 105-106, 97).

5

## II. ANALYSIS

Microsoft seeks an order compelling Hochstein and Tenenbaum to answer questions about documents Plaintiffs produced after Hochstein and Tenenbaum's previous depositions and about the OKI Data Book. (Def.'s Mot. 5). Microsoft argues that counsel's instructions not to answer questions "are egregious and flagrant violations of the Federal Rules and the case law." (*Id.* at 9). Microsoft contends that counsel cannot unilaterally decide which questions should be answered but must merely object to the question and allow it to be answered. (*Id.* at 10).

Plaintiffs argue that counsel properly instructed Hochstein and Tenenbaum not to answer questions outside of the scope of the deposition. (Pls.' Resp. 4). Plaintiffs argue that, "Microsoft's improper questions all pertain to Microsoft's effort to develop an eve-of-trial invalidity defense that has nothing to do with Conair or the documents produced since the inventors' March 2005 deposition." (Pls.' Resp. 7).

Under Fed. R. Civ. P. 30(c)(2), "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Courts have interpreted Rule 30(c)(2) to prohibit attorneys from instructing a deponent not to answer a question or otherwise limiting the deponent's answer. *See Armstrong v. Hussmann Corp.*, 163 F.R.D. 299, 303 (E.D. Mo.1995) (internal citations omitted) ("attorneys may not make 'any comments, either on or off the record . . . which might suggest or limit a witness's answer.'"); *United States ex rel. Tiesinga v. Dianon Sys. Inc.*, 240 F.R.D. 40, 43 (D. Conn. 2006) ("Ordinarily, it is improper for counsel to direct a witness not to answer a question posed at a deposition, even if the question is improper or beyond the scope of a deposition notice.").

Plaintiffs' counsel did not instruct Plaintiffs not to answer based on privilege, or court order,

or present a motion to the Court to terminate or limit. If the deposition is not limited by a court order prior to the deposition, once the deposition is underway, the only mechanism to limit questioning is to terminate the deposition and move for a protective order. *See* Fed. R. Civ. P. 30(d)(3)(A) (a party may only terminate the deposition if it is conducted in bad faith or an attorney "unreasonably annoys, embarrasses, or oppresses the deponent or party."). Plaintiffs' attorneys' instructions to not answer, therefore, were not proper.

Nonetheless, Microsoft is also at fault. In the email exchange between the parties' attorneys regarding these depositions, the attorneys agreed to limit the depositions to the documents produced after the previous depositions, unless the new documents required the revisiting of an old document or issue. Mr. Pritikin's refusal to acknowledge that agreement violated the agreement the parties reached and this Court's Rules of Civility. Specifically, Civility Rule 6, in the section "Attorney's Responsibilities to Other Counsel," reads: "We will adhere to all express promises and agreements with other counsel, whether or in writing, and will adhere in good faith to all agreements implied by the circumstances or local customs." Here, the parties came to an agreement about the scope of the depositions. Mr. Pritikin's refusal to acknowledge that agreement was a violation of the agreement and the rules of civility.

Accordingly, this Court will allow Microsoft to re-open the inventor depositions, limited to questions about the new documents and, when appropriate, the new documents' relatedness to old documents.

Plaintiffs' counsel may not instruct his clients to not answer appropriate questions. As to questions regarding expertise, Plaintiffs must either answer the questions, or state that they are unable to answer the question due to a lack of expertise, to wit not being informed about knowledge

or skill of other people in the field. A third option is to present the Court with a motion to limit testimony, pursuant to Fed. R. Civ. P. 30(b)(3). *See United States ex rel Tiesinga v. Dianon Systems*, 240 F.R.D. 40, 43 (2006)("[D]ianon's counsel baldly sought to use the guise of a 30(b)(6) deposition to try to force a non-designated expert to embrace the trial opinions expressed by the parties' own designated experts. There is no warrant in the rules for such conduct.").

The Court declines to impose costs.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Microsoft Corporation's Motion to Compel Answers to Deposition Questions, as set forth in this opinion. (Doc. No. 348).

**SO ORDERED.**


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 21, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 21, 2009.

S/Denise Goodine
Case Manager